**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| IN RE:<br><br>JOHN A. JOHNSON and LATHA JOHNSON<br><br>Debtors. | IN CHAPTER 7 PROCEEDINGS<br><br>CASE NO. 26-50434<br><br>JUDGE TIFFANY STRELOW COBB |
| ASHISH DHEMRE<br>BUILDING A2, APARTMENT 002,<br>MAZYED ETIHAD ACCOMMODATION,<br>ABU DHABI, UAE<br><br>ELISHEBA CINGAPAGU<br>VILLA 139, FLAT 201, ABDULLAH BIN<br>AHMAD AL OTHAIBA STREET,<br>AL ZAFRANAH, ABU DHABI, UAE<br><br>SHITAL VIKRAMSINH KATKAR<br>741 PENITENCIA ST<br>MILPITAS, CA 95035<br><br>RAJ SHEKHAR<br>24 SILVER STREET, APT. G2<br>GREAT BARRINGTON, MA 01230<br><br>LE THI NGUYET<br>C/O CITIZEN PATHWAY CO., LTD<br>9TH L'-FLOOR, THE WATERFRONT<br>SAIGON. 0L 'L'ON DLRC THANG<br>SAI CON WARD. HCMC, VIETNAM<br><br>VO THANH TUNG<br>C/O CITIZEN PATHWAY CO., LTD<br>9TH L'-FLOOR, THE WATERFRONT<br>SAIGON. 0L 'L'ON DLRC THANG<br>SAI CON WARD. HCMC, VIETNAM | ADV. PROCEEDING NO.<br><br>JURY DEMAND ENDORSED HEREIN |

TRAN XUAN SON
C/O CITIZEN PATHWAY CO., LTD
9TH L'-FLOOR, THE WATERFRONT
SAIGON. 0L 'L'ON DLRC THANG
SAI CON WARD. HCMC, VIETNAM

STEPHEN VAN DER WALT
16 AGAPANTHUS AVENUE
WELGEDACHT ESTATE
BELLVILLE, SOUTH AFRICA, 7530

SIRISHA VASANTHA
VASANTHA EMERALD GARDENS
KAVURI HILLS
MADHAPUR, HYDERABAD
TELENGANA INDIA 500033

JAN RUTGERS
86 HOWARD ROAD,
GREENWICH, CT 06831

KARTIKKUMAR TRIVEDI
4680 SANDY CREEK DRIVE
CUMMING, GA 30041

Plaintiffs,

v.

JOHN A. JOHNSON,
4319 VAUX LINK
NEW ALBANY, OH 43054

NEETHI JOHNSON
4319 VAUX LINK
NEW ALBANY, OH 43054

NITHIN JOHNSON
4319 VAUX LINK
NEW ALBANY, OH 43054

HOSPITAL INNOVATIONS LLC
C/O HAROLD RAMSEY
570 BARNETT PLACE

RIDGEWOOD, NJ 07450-1602 )
)
MARTINS FERRY LLC. )
90 N 4TH ST, )
MARTINS FERRY, OHIO 43935 )
)
EAST OHIO HOSPITAL LLC )
C/O HAROLD RAMSEY )
570 BARNETT PLACE )
RIDGEWOOD, NJ 07450-1602 )
)
Defendants )

**ADVERSARY COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT AND TO DENY DISCHARGE AND FRAUDULENT TRANSFER CLAIMS**

Plaintiffs, Ashish Dhemre, Elisheba Cingapagu, Shital Vikramsinh Katkar, Raj Shekhar, Le Thi Nguyet, Vo Thanh Tung, Tran Xuan Son, Stephen Van Der Walt, Sirisha Vasantha, Kartikkumar Trivedi and Jan Rutgers (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against John Johnson ("Debtor") and Defendants Neethi Johnson, Nithin Johnson, Hospital Innovations LLC, Martins Ferry LLC and East Ohio Hospital LLC (collectively "Defendants"), allege as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).

2. The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

4. Defendant John Johnson ("Debtor") filed a voluntary Chapter 7 petition on January 30, 2026, Case No. 2:26-bk-50434.

5. Plaintiffs Ashish Dhemre, Elisheba Cingapagu, Shital Vikramsinh Katkar, Raj Shekhar, Le Thi Nguyet, Vo Thanh Tung, Tran Xuan Son, Stephen Van Der Walt, Sirisha Vasantha, Kartikkumar Trivedi and Jan Rutgers (collectively, "Plaintiffs"), are creditors of Debtor within the

meaning of 11 U.S.C. §101(10), having transferred funds to Hospital Innovations in reliance upon Debtor's representations and possessing claims against Debtor arising from fraud, misrepresentation, breach of fiduciary duty, and related misconduct.

6. Defendant Hospital Innovations LLC ("Hospital Innovations") is an Ohio limited liability company and a necessary party to this lawsuit because complete relief cannot be accorded among existing parties without adjudicating the validity of the operating agreements and subsequent transfers involving Hospital Innovations.

7. Hospital Innovations operations were conducted through its wholly owned subsidiaries, Defendant Access Martins Ferry LLC ("Access Martins Ferry") and Defendant East Ohio Hospital LLC ("East Ohio Hospital").

8. Defendants Neethi Johnson and Nithin Johnson are necessary or proper parties to this lawsuit because they have received Hospital Innovations funds through insider transactions.

**BRIEF STATEMENT OF FACTS COMMON TO ALL COUNTS**

9. In February and March 2022, Plaintiffs, along with other EB-5 investors, each entered into agreements to invest $560,000 in Hospital Innovations consisting of a $500,000 capital contribution and a $60,000 administrative fee.

10. Hospital Innovations was formed to finance the development and operation of a hospital providing mental health and substance use disorder services. Hospital Innovations operations were conducted by Debtor through its wholly owned subsidiaries, Access Martins Ferry and East Ohio Hospital (collectively, "the enterprise").

11. Plaintiffs' investment in the enterprise was induced by written offering materials, including a Confidential Private Placement Memorandum dated February 18, 2022 (the "PPM") and an Operating Agreement dated February 21, 2022 (the "Original Operating Agreement"). Due to the

confidentiality provisions and voluminous nature of the agreements signed by the parties, they will be shared subject to a confidentiality order.

12. In February or March 2022, through the PPM and the Original Operating Agreement disseminated electronically to Plaintiffs by Debtor and his agents, Debtor represented in writing that:

a. Hospital Innovations owned and operated a viable hospital business;

b. Investor funds in the enterprise would be lawfully deployed in job-creating activities compliant with EB-5 requirements;

c. The investment in the enterprise complied with all applicable federal and state laws;

d. Investor capital in the enterprise would be protected by enforceable governance safeguards including an independent Special Manager whose written consent was required before any sale, transfer, dissolution, or bankruptcy filing of the enterprise; and

e. Ohio law governed the relationship.

13. In February or March 2022, Plaintiffs invested in good faith in full reliance on these written representations. Plaintiffs had no independent ability to verify the information supplied by Debtor and had no knowledge of any misconduct described in this complaint prior to 2025.

14. At the time the PPM was issued and Plaintiffs invested in the enterprise, Debtor was the sole manager of the enterprise and failed to disclose the following material facts:

f. Debtor filed for personal bankruptcy protection in August 2005;

g. Debtor entered into a $425,000 settlement with the U.S. Department of Justice arising from false claims in the healthcare context;

h. Debtor's personal cognovit promissory notes secured by East Ohio Hospital;

i. Debtor never filled the Special Manager position in Defendant Hospital Innovations' Original Operating Agreement Section 5.1.[1]

15. These facts materially bore on Debtor's financial condition, credibility, and fitness to sponsor and manage the Plaintiffs' EB-5 investment in the enterprise.

16. These omissions rendered the PPM and accompanying financial representations materially false and/or misleading when made.

17. In good faith Plaintiffs relied on the PPM and associated written materials in deciding to invest their capital in Hospital Innovations.

18. Debtor knew of his own prior bankruptcy and DOJ settlement at the time the PPM was drafted and disseminated.

19. Debtor and Defendants intentionally omitted these facts from the offering documents, despite their obvious materiality to Plaintiffs and the other EB-5 investors evaluating both immigration ramifications and financial risk.

20. Debtor's and Defendants' omissions were not accidental or negligent but were made with the intent to induce reliance by Plaintiffs and other EB-5 investors.

21. After Plaintiffs invested in Hospital Innovations, Debtor exercised exclusive control over the enterprise as no special manager was ever appointed by Debtor.

22. In July 2022, without any notice or consent or signatures of Plaintiffs, Debtor unilaterally executed another Amended and Restated Operating Agreement on July 14, 2022 (the "Amended Operating Agreement") to add $32,000,000 of Class B priority member in Hospital Innovations.

[1] The Original Operating Agreement will be provided after the confidentiality order is signed by the parties and Court.

23. In addition, Debtor eliminated the entire special manager framework from the Original Operating Agreement signed by the parties per Sections 4.12 and 5. Consequently, the only independent governance check on Debtor's authority requiring consent from Plaintiffs before any sale, transfer, dissolution, or bankruptcy was fraudulently deleted by Debtor from the Amended Operating Agreement without Plaintiffs' knowledge or consent.

24. From 2022 onward, Debtor or Defendants provided no annual financial reports or profit and loss statements to Plaintiffs for tax years 2023 or 2024 even though the Original Operating Agreement signed by the parties required it. Debtor or Defendants finally provided some information when the U.S. Citizenship and Immigration Services ("USCIS") issued a request for evidence.

25. In October 2024, the same month USCIS approved Plaintiffs' I-526 immigration petitions (first step)[2], Debtor and his son, Defendant Nithin Johnson (then-acting Chief Operating Officer), caused Hospital Innovations or East Ohio Hospital to obtain two emergency loans totaling $2,000,000 to cover payroll and critical operating expenses - evidencing acute financial distress.

26. Simultaneously, without any notice or disclosure to Plaintiffs, East Ohio Hospital reported a loss of $15 million in 2024.

27. Thus, Debtor did not disclose the emergency loans, the personal guarantees or notes, or the severe financial deterioration to Plaintiffs, despite a continuing duty to disclose material facts affecting their investment in the enterprise.

28. While Defendant East Ohio Hospital was incurring catastrophic losses, Debtor transferred at least $276,790.80 over the course of various dates to his daughter, Defendant Neethi Johnson, under the description of "salary and draws".

[2] Second Step (Form I-829) of the immigration petitions is still pending.

29. On or about January 28, 2025, the Centers for Medicare & Medicaid Services ("CMS") formally notified Debtor that his entities were out of compliance with fundamental federal participation requirements.

30. CMS subsequently issued a final termination letter on March 25, 2025 because the deficiencies identified in the January 2025 notice were not corrected.

31. East Ohio Hospital abruptly ceased operations in March 2025, and Medicare participation was terminated effective April 17, 2025.

32. Debtor did not inform Plaintiffs of the CMS findings, the impending termination from Medicare participation, or East Ohio Hospital's closure.

33. In June 2025, while insolvent or rendered insolvent thereby, Debtor executed a transaction purporting to transfer his interests in, and control over, Hospital Innovations to Harold Ramsey and a newly formed shell entity, 360 Healthcare, Inc. ("360 Healthcare").

34. 360 Healthcare was formed approximately one day before the transaction and had no operating history, assets, or revenue.

35. The stated consideration for this transaction was an $11.5 million promissory note, with no cash paid at closing. This transaction was not disclosed to Plaintiffs or the other EB-5 investors despite the enterprise having been capitalized with approximately $9 million of investor equity, and despite unresolved liabilities, regulatory exposure including USCIS obligations, and potential securities compliance deficiencies.

36. Debtor and Defendants Hospital Innovations executed this transaction without the knowledge or consent of Plaintiffs.

37. The economic substance of the transaction was the transfer of a valuable enterprise in exchange for an uncollectable note (or notes) that lacked reasonably equivalent value, involved no cash consideration, and left the enterprise insolvent.

38. After the purported transfer, Debtor continued to exercise control over East Ohio Hospital's receivables and caused funds to be diverted to undisclosed accounts.

39. These actions were inconsistent with any bona fide sale and demonstrated Debtor's continuing scheme to hinder, delay, and defraud Plaintiffs and other creditors.

40. On January 30, 2026, Debtor filed a voluntary Chapter 7 petition in this Court.

41. In sworn bankruptcy or state court filings, Debtor:

j. Disclosed the sale of his interest in Hospital Innovations only in an addendum without stating the purchase price;

k. Characterized approximately $19 million in promissory notes as likely uncollectible; and

l. Disclosed insider transfers during periods when Hospital Innovations and/or East Ohio Hospital were experiencing severe financial distress and substantial operating losses.

42. Debtor's bankruptcy filings further revealed the prior 2005 bankruptcy that had been concealed from Plaintiffs and the other EB-5 investors at the time of investment.

43. Plaintiffs reasonably relied on Debtor's written representations and omissions in the PPM and related offering materials in deciding to invest $560,000 each in the enterprise. Plaintiffs acted in good faith at all times and had no knowledge of any misconduct described in this complaint prior to 2025.

44. Plaintiffs would not have invested had Debtor disclosed his prior bankruptcy, the DOJ False Claims settlement, the personal loans secured by cognovit promissory notes against East Ohio Hospital, or the existence and true nature of the governance deficiencies in the enterprise.

45. As a direct and proximate result of Defendants' false representations, omissions, and/or fraudulent conduct, Plaintiffs suffered substantial financial loss, including the loss of their EB-5 capital investments.

**COUNT I: NONDISCHARGEABILITY OF DEBT**
***11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B)***

46. Plaintiffs reallege and re-incorporate all preceding paragraphs as if fully restated herein.

47. Debtor obtained Plaintiffs' money by false pretenses, false representations, and/or actual fraud.

48. Debtor knowingly made materially false representations, including in written offering materials, regarding:

m. His financial history;

n. Regulatory compliance;

o. Financial viability of the enterprise;

p. His personal adverse interest in the form of personal loans secured by cognovit notes against East Ohio Hospital; and

q. His intent to act as a fiduciary and steward of the EB-5 investments.

49. Debtor intended to deceive Plaintiffs and induce reliance.

50. Plaintiffs justifiably and reasonably relied on Debtor's written representations.

51. Plaintiffs suffered loss of their EB-5 investments as a direct and proximate result of their reliance on Debtor's representations.

52. Alternatively, the debt arose from materially false written statements respecting Debtor's financial condition, upon which Plaintiffs reasonably relied because the PPM affirmatively represented that Debtor and the enterprise were financially sound, adequately capitalized, free from undisclosed liabilities, and compliant with applicable regulations.

53. Thus, the debt is therefore nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B).

**COUNT II: NONDISCHARGEABILITY OF DEBT**
**11 U.S.C. § 523(a)(4)**

54. Plaintiffs reallege and re-incorporate all preceding paragraphs as if fully restated herein.

55. Debtor obtained Plaintiffs' money by false pretenses, false representations, and/or actual fraud while acting in a fiduciary capacity.

56. Debtor, as sole manager of the enterprise, held a position of trust and had an express or implied duty to segregate Plaintiffs' funds and not misuse them to pay off his personal guarantees or promissory notes to other entities, banks, or individuals.

57. Debtor appropriated Plaintiffs' (and other EB-5) funds entrusted for specific EB-5 job-creating purposes and instead diverted or transferred such funds for unauthorized insider payments and non-enterprise purposes, constituting embezzlement within the meaning of 11 U.S.C. §523(a)(4).

58. Debtor knowingly made materially false representations and omissions, including in written offering materials regarding his financial history, regulatory compliance, financial viability of the enterprise; and his intent to act as a fiduciary and steward of the EB 5 investments.

59. As a result, Plaintiffs have suffered a total loss of their EB-5 investments as a direct and proximate result of Debtor's misappropriations.

60. Thus, the debt is therefore nondischargeable under 11 U.S.C. § 523(a)(4).

**COUNT III: NONDISCHARGEABILITY OF DEBT**
**11 U.S.C. § 523(a)(6)**

61. Plaintiffs reallege and re-incorporate all preceding paragraphs as if fully restated herein.

62. Debtor, as manager of the enterprise, knowingly made materially false representations and omissions, including in written offering materials regarding his financial history, regulatory

compliance, financial viability of the enterprise; and his intent to act as a fiduciary and steward of the EB 5 investments.

63. Debtor intentionally injured Plaintiffs' property interests, membership rights, governance rights, and invested capital through deliberate diversion, concealment, and destruction of enterprise value.

64. Accordingly, the debt is therefore nondischargeable under 11 U.S.C. § 523(a)(6).

**COUNT IV: NONDISCHARGEABILITY OF DEBT**
**11 U.S.C. § 523(a)(19)**

65. Plaintiffs reallege and re-incorporate all preceding paragraphs as if fully restated herein.

66. Debtor and Defendants have violated Federal (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934) and/or the State of Ohio securities laws or any regulation or order issued under the Federal or State of Ohio's securities laws; or common law fraud, deceit, or manipulation in connection with the purchase or sale of the enterprise before the petition was filed.

67. Accordingly, Plaintiffs seek in this adversary proceeding to liquidate and determine liability for securities fraud, which if established renders the debt nondischargeable under 11 U.S.C. §523(a)(19).

**COUNT V: DENIAL OF DISCHARGE**
**11 U.S.C. § 727(a)(2) or (a)(3)**

68. Plaintiffs reallege and re-incorporate all preceding paragraphs as if fully restated herein.

69. Within one year of pre-petition, Debtor transferred and concealed property with the intent to hinder, delay, or defraud Plaintiffs as creditors.

70. Debtor failed to maintain records for the enterprise and failed to provide Plaintiffs with the true financial condition of the enterprise.

71. Upon information and belief, Debtor diverted receivables, transferred control over Hospital Innovations for no value, and retained de facto control over the enterprise.

72. Debtor is therefore not entitled to a discharge.

**<u>COUNT VI</u>**
**Fraudulent Transfer, Conversion, Civil Conspiracy or Alter Ego**

73. Plaintiffs reallege and re-incorporate all preceding paragraphs as if fully restated herein.

74. Plaintiffs acquired membership interests and contractual ownership rights in Defendant Hospital Innovations LLC pursuant to the Original Operating Agreement and collectively contributed in excess of $3.5 million in capital to the enterprise.

75. Debtor and Defendants intentionally and wrongfully interfered with Plaintiffs' membership interests, voting rights, governance rights, and economic interests by executing the Amended Operating Agreement without the notice, approvals, signatures, or voting consents required under the Original Operating Agreement.

76. Debtor and Defendants used the enterprise as a mere instrumentality and alter ego to divert, encumber, or pledge substantially all of Plaintiffs invested capital to satisfy preexisting debts, insider obligations, cognovit promissory notes, personal guarantees, and other obligations of Debtor, his family members, Defendants, and related nonparties.

77. Debtor and Defendants knowingly commingled enterprise funds among affiliated entities under Debtor's control, caused intercompany transfers through undisclosed bank loans, cognovit promissory notes, insider guarantees, and related-party transactions, and thereby rendered Plaintiffs' membership interests substantially or entirely worthless.

78. In or about June 2025, while insolvent or rendered insolvent thereby, Debtor caused the transfer of his interests in Hospital Innovations LLC to 360 Healthcare for less than reasonably equivalent value, without cash consideration, and with the actual intent to hinder, delay, or defraud Plaintiffs and other creditors.

79. As a result of Defendants' fraudulent transfers, insider transactions, conversion or comingling of funds, Plaintiffs demand judgment against Defendants for an amount as proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A. For Counts I, II and III, determine that Debtor's debt to Plaintiffs is nondischargeable under 11 U.S.C. §§ 523(a)(2) or 523(a)(4) or 523(a)(6);

B. For Count IV, determine that Debtor's and Defendants' debt to Plaintiffs violated Federal or State of Ohio's securities law under 11 U.S.C. § 523(a)(19);

C. For Count V, enter judgment denying Debtor a discharge pursuant to 11 U.S.C. § 727;

D. For Count VI, enter judgment for an amount as proven at trial.

E. Each Plaintiff has suffered the loss of at least $560,000.00 plus accrued prejudgment interest from March 2022, plus attorneys' fees recoverable under Original Operating Agreement Section 13.13 prevailing party clause and demand an imposition of a constructive trust, accounting, avoidance of fraudulent transfers, injunctive relief or judgment in favor of Plaintiffs for all damages, interest, costs, and attorneys' fees against Defendants jointly and severally as permitted by law;

F. Grant any further relief the Court deems just and proper.

Respectfully submitted,

*/s/ Matthew R. Duncan*

Matthew R. Duncan (#0076420)
Duriya Dhinojwala (0074982)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH 44308
(330) 253-5060
Fax: (330) 253-1977
Email: mrduncan@bmdllc.com
*Counsel for Plaintiffs*

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

*/s/ Matthew R. Duncan*
Matthew R. Duncan (0076420)
*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing, ADVERSARY COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT AND TO DENY DISCHARGE, has been sent to:

Via ECF:

- Asst US Trustee (Col) ustpregion09.cb.ecf@usdoj.gov
- David Alan Beck, Attorney for Raju Custom Wood Products, Inc., Raju Shah, Kirti, Shah, Prospect Holdings, LLC, Shah Family, LLC, Ravi K. Shah Trust, and Raju K. Shah Trust - beck@carpenterlipps.com
- Anthony Betta, Attorney for Carlile Patchen & Murphy LLC- abetta@cpmlaw.com
- James H. Cannon. Attorney for South Florida Friends Investment LLC james@cannonlawohio.com
- Andrew P Cooke, Attorney for Ohio Attorney General - acooke@cdgattorneys.com, mhicks@cdgattorneys.com
- Jacquelyn Anne Klima, Attorney for Fidelity and Deposit Company of Maryland - jklima@kerr-russell.com, ykotlarczyk@kerr-russell.com
- Joshua A. Koltak jkoltak@fgks-law.com, mbrautigam@fgks-law.com
- Thomas R Merry tmerry@thomasrmerrylaw.com

- Michael A O'Brien, Attorney for First State Bank - mobrien@obrienlawoffices.com
- Matthew A Rich, Attorney for First State Bank - mrich@katzteller.com, bpalmer@katzteller.com
- Jeffrey B Sams, Attorney for Yeshwant P. Reddy - jsams@jeffsamslaw.com
- Matthew T Schaeffer. Attorney for First Commonwealth Bank - mschaeffer@baileycav.com, lpatterson@baileycav.com
- Elliot M Smith. Attorney for Gemilat Chessed IDF LLC - ESmith@beneschlaw.com, Docket2@beneschlaw.com
- Philip K Stovall, Attorney for Debtors, John A. Johnson and Latha Johnson- pstovall@hahnlaw.com, cmb@hahnlaw.com;ecarter@hahnlaw.com
- Brent A Stubbins, Chapter 7 Trustee - bstubbins@swbwlawfirm.com, bs@trustesolutions.net
- Brent A. Stubbins, Chapter 7 Trustee, bstubbins@swbwlawfirm.com
- Brad Terman - b.terman@wslawllc.com
- Robert B Trattner - rtrattner@ttmlaw.com
- Zachary Weigel, Attorney for Hamni Bank - zachary.weigel@fmglaw.com

and by regular U.S. Mail to:

BMO Bank N.A.
AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

*/s/ Matthew R. Duncan*
Matthew R. Duncan (0076420)
*Counsel for Plaintiffs.*

4922-6283-1018, v. 2