**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>John A. Johnson, and<br>Latha Johnson,<br><br>Debtors. | Case No. 26-50434<br><br>Chapter 7<br><br>Judge Tiffany Strelow Cobb |
| Ashish Dhemre, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>John A. Johnson, *et al.*,<br><br>Defendants. | Adv. Proc. No. 26-02039 |

**MOTION OF JOHN A. JOHNSON TO DISMISS COMPLAINT**
**(Related to Doc. 1)**

Defendant John A. Johnson, by and through his undersigned counsel, hereby moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to dismiss all claims and causes of action against him set forth in the *Adversary Complaint to Determine Nondischargeability of Debt and to Deny Discharge and Fraudulent Transfer Claims* (Doc. 1) (the "Complaint"). A memorandum in support of this motion of follows.

Respectfully submitted,

*/s/ Philip K. Stovall*
Philip K. Stovall (0090916)
**HAHN LOESER & PARKS LLP**
65 E. State Street, Suite 2500
Columbus, Ohio 43215
Phone: (614) 221-0240
Fax: (614) 221-5909
E-mail: pstovall@hahnlaw.com

*Counsel to Defendant John A. Johnson*

## MEMORANDUM IN SUPPORT

### I. Introduction

1. Defendant John A. Johnson ("Defendant" or "Dr. Johnson"), along with his wife, Latha Johnson ("Ms. Johnson"), commenced a bankruptcy case under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on January 30, 2025 (the "Petition Date"). Prior to the Petition Date, Dr. Johnson owned or otherwise had interests in several entities relating to the healthcare industry, including Hospital Innovations, LLC ("Hospital Innovations"), which Dr. Johnson sold in June 2025. Hospital Innovations was the holding company of East Ohio Hospital, LLC ("EOH") and Access Martins Ferry, LLC ("AMF"). EOH owned and operated East Ohio Regional Hospital located in Martins Ferry, Ohio, and AMF was, in essence, EOH's landlord.

2. In early 2022, Plaintiffs[1] invested in Hospital Innovations pursuant to the U.S. government's EB-5 investor program (the "EB-5 Program")[2]. In March 2025, due to mounting financial troubles, EOH ceased operations. Complaint at ¶31. In June 2025, Dr. Johnson sold his membership interests in Hospital Innovations to 360 Healthcare, Inc. through a seller-financed transaction. *Id*. at ¶¶ 33, 35.

3. Plaintiffs filed their Complaint on May 11, 2026. The first four counts of the Complaint are to determine nondischargeability of debt under Bankruptcy Code section 523(a)(2) (Count I); section 523(a)(4) (Count II); 523(a)(6) (Count III); and 523(a)(19) (Count IV). Count V of the Complaint seeks denial of Dr. Johnson's discharge pursuant to section 727(a)(2) or (a)(3),

---

[1] "Plaintiffs" in this adversary proceeding are Ashish Dhemre, Elisheba Cingapagu, Shital Vikramsinh Katkar, Raj Shekhar, Le Thi Nguyet, Vo Thanh Tung, Tran Xuan Son, Stephen Van Der Walt, Sirisha Vasantha, Kartikkumar Trivedi and Jan Rutgers.

[2] The EB-5 Program "allows foreign national investors to qualify for lawful permanent resident (LPR) status (i.e., a green card) by investing a specified amount of capital in a U.S. enterprise and creating at least 10 U.S. jobs." Cong. Rsch. Serv., IF13040, *Overview of the EB-5 Immigrant Investor Program* (2025), https://www.congress.gov/crs-product/IF13040?hl=IF13040&s=1&r=1.

and Count VI seemingly relates to state law claims or legal theories, including fraudulent transfer, conversion, civil conspiracy, and alter ego.

4. As explained below, Counts I through V of the Complaint must be dismissed because the allegations are insufficient to show that Plaintiffs are creditors of Dr. Johnson. Moreover, even if Plaintiffs were creditors of Dr. Johnson, the allegations set forth in the Complaint fail to support any claim under 11 U.S.C. §§ 523(a) or 727(a)(2) or (3).

5. The disjointed assortment of claims set forth in Count VI likewise must be dismissed for several reasons, including because pleading all such claims within a single count violates Civil Rule 10, as made applicable to this proceeding by Bankruptcy Rule 7010, and because the allegations relating to the claims are wholly conclusory.

## II. Standard for Motion to Dismiss

6. Civil Rule 12(b)(6) applies in adversary proceedings. Fed. R. Bankr. Proc. 7012(b). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. The factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

7. Civil Rule 8(a), as made applicable by Bankruptcy Rule 7008, establishes the basic requirements for pleadings in all federal civil actions. It states a claim for relief must contain a

short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). With respect to any claim with a fraud component, however, Civil Rule 9(b), as made applicable by Bankruptcy Rule 7009, imposes a heightened pleading requirement and requires a party to "state with particularity the circumstances constituting fraud or mistake." *Franke v. Norfolk S. Ry. Co.*, Case No. 3:20 CV 2152, 2021 Dist. LEXIS 159285, at *9 (N.D. Ohio Aug. 24, 2021).

## III. <u>Law and Argument</u>

### A. Counts I through IV should be dismissed because the Complaint does not plausibly allege the existence of a debt owed by Dr. Johnson to Plaintiffs.

8. As noted above, Counts I through IV seek a determination of nondischargeability under various subsections of 11 U.S.C. § 523(a). "The first step in any analysis under § 523(a), however, is not whether a debt is non-dischargeable, it is whether a debt even exists—a 'threshold condition' to whether § 523(a) applies." *In re Pearl*, 577 B.R. 513, 523 (Bankr. E.D. Ky. 2017) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)). *See also In re Leist*, 398 B.R. 595, 601 (Bankr. S.D. Ohio 2008) ("As elementary as it may seem, a creditor must establish that he is owed a debt before it can be determined that the debt is nondischargeable under any § 523(a) exception to discharge."). "A 'debt' is defined in the [Bankruptcy] Code as 'liability on a claim,' [and] a 'claim' is defined in turn as a 'right to payment[.]'" *Pearl*, 577 B.R. at 523 (quoting *Cohen*, 523 U.S. at 218). *See also* 11 U.S.C. § 101(5). "Whether a valid claim exists must be determined in accordance with state law *before* a bankruptcy court decides whether, under federal law, the debt is non-dischargeable[.]" *Id*. at 523-24 (emphasis in original).

9. Plaintiffs allege that they invested in Hospital Innovations pursuant to the EB-5 Program. Investments made under the EB-5 Program must be at-risk capital investments, meaning that such investments are not loans and there is no guaranteed right of repayment. *See* 8 U.S.C.

§ 1153 (excluding from the term "capital" for purposes of the EB-5 Program "capital invested in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement[.]"). Thus, these investments did not create a debt or claim against anyone – let alone Dr. Johnson – and cannot be a basis for sustaining a cause of action under 11 U.S.C. § 523(a).

10. Plaintiffs make only one allegation in an attempt to plead claims against Dr. Johnson – stating, in conclusory fashion, that Plaintiffs possess "claims against [Dr. Johnson] arising from fraud, misrepresentation, breach of fiduciary duty, and related misconduct." Complaint at ¶5. Plaintiffs, however, fail to recite the elements of any state law cause of action that allegedly gives rise to Plaintiffs' claims; indicate the fiduciary duty that Dr. Johnson allegedly owed to Plaintiffs (as opposed to Hospital Innovations); or describe with any particularity any conduct that allegedly gives rise to any state law claim for fraud. Indeed, Plaintiffs do not even describe the applicable state law under which these claims arise.

11. The conclusory allegations in the Complaint regarding the existence of debts – which are set forth in a single sentence – are woefully insufficient to establish that any Plaintiff holds a claim against Dr. Johnson individually. Plaintiffs' Complaint leaves Dr. Johnson (and the Court) guessing at the legal bases for the alleged debts – and the facts that Plaintiffs contend support any such legal bases – and Plaintiffs thus have failed to adequately plead the existence of a debt owed by Dr. Johnson. Counts I through IV of the Complaint must be dismissed.

**B. Count V should likewise be dismissed because Plaintiffs' Complaint fails to demonstrate standing to bring such cause of action.**

12. Count V of the Complaint seeks to deny Dr. Johnson a discharge pursuant to 11 U.S.C. § 727(a)(2) or (3). Under subsection (c)(1), however, only "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section." 11 U.S.C. § 727(c)(1). "The term 'creditor' means – (A) entity that has a claim against the debtor

that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim." 11 U.S.C. § 101(10).

13. As described above, the Complaint fails to adequately plead that Plaintiffs hold any claims against Dr. Johnson, as such term is defined by the Bankruptcy Code. Accordingly, Plaintiffs likewise have not adequately pled that they are "creditors" of Dr. Johnson, which is required for them to have standing to bring a cause of action objecting to Dr. Johnson's discharge. Count V of the Complaint must be dismissed.

**C. Even if Plaintiffs had adequately plead the existence of a debt, the causes of action under sections 523(a) and 727 must be dismissed.**

i. Section 523(a)(2) (Count I)

14. Assuming *arguendo*, solely for purposes of this Motion, that Plaintiffs adequately alleged the existence of a debt owed by Dr. Johnson, Plaintiffs nonetheless fail to assert a plausible claim relief under either 11 U.S.C. § 523(a)(2)(A) or (B).

15. Section 523(a)(2) of the Bankruptcy Code excepts the following debts from discharge:

> [Debts] . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a).

16. The Sixth Circuit Court of Appeals set forth the elements of a claim under 11 U.S.C. § 523(a)(2)(A) in *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277 (6th Cir. 1998):

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Id.* at 280–81.

17. In addition, because section 523(a)(2)(A) and (B) sound in fraud, Plaintiffs must adhere to the heightened pleading requirement of Civil Rule 9(b). Under Civil Rule 9(b), "a plaintiff must generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *In re Goss*, 605 B.R. 189, 198 (Bankr. S.D. Ohio 2019) (quoting *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014)). In this case, the Complaint fails to adequately plead a cause of action under either 11 U.S.C. § 523(a)(2)(A) or (B).

18. Although Plaintiffs generally reference a Private Placement Memorandum and Hospital Innovation's Operating Agreement distributed in February or March 2022, the Complaint does not identify the specific language of the alleged misrepresentations, where such statements appeared in the documents, who made them, when they were made, or why they were false when made.

19. In addition, many of the allegations identified as "false representations" are not representations of existing fact but instead are statements concerning future performance, future business success, regulatory outcomes, or future conduct of the enterprise. Complaint at ¶¶ 12, 48. For example, Plaintiffs allege that they were told investor funds would be properly deployed, that governance safeguards would exist, and that the enterprise would operate as contemplated. *Id.* at 12. Such allegations largely concern future expectations and business plans. Promises regarding future performance are generally not actionable unless the debtor made the promise with no intention of keeping it. *See Schiller DuCanto & Fleck, LLP v. Potter (In re Potter)*, 616 B.R. 745, 752 (Bankr. N.D. Ill. 2020) ("To make out a section 523(a)(2)(A) claim, though, a false representation must ordinarily relate to a 'present or past fact,' not future facts or future conduct. A false promise can support a section 523(a)(2)(A) claim only if the debtor made the promise with no intention of keeping it.") (citations and internal quotation marks omitted).

20. The subsequent failure of a business venture does not establish that statements concerning future performance were false when made. Yet the Complaint relies almost entirely on events that occurred years after the investment – including financial losses, emergency loans, CMS actions, and the eventual demise of the enterprise – to infer fraud in 2022. Complaint at ¶¶ 25-39.

21. The Complaint also repeatedly alleges that Dr. Johnson omitted certain information, including a prior bankruptcy filing[3], a Department of Justice settlement, and certain loan obligations. Complaint at ¶¶ 14–20. However, the Complaint fails to identify any legal duty requiring disclosure of those matters, the specific context in which disclosure was required, or how the omission rendered any identified statement materially misleading.

---

[3] Although the Clerk's entry on February 9, 2026 in Dr. Johnson's bankruptcy case indicates that he filed a prior case Massachusetts in 2005, Dr. Johnson in fact has not previously filed bankruptcy. A review of the docket in that case reveals that Dr. Johnson was not the debtor.

22. The Complaint is similarly deficient with respect to the purported cause of action under 11 U.S.C. § 523(a)(2)(B).

23. As noted above, Section 523(a)(2)(B) requires a specific written statement respecting financial condition. The Complaint does not identify any balance sheet, financial statement, net-worth statement, income statement, or similar written representation concerning Dr. Johnson's or an insider's financial condition. Instead, Plaintiffs rely upon alleged omissions from the Private Placement Memorandum and alleged statements concerning the enterprise's operations, regulatory compliance, governance structure, and business prospects. Complaint ¶¶ 12, 14–20, and 52. Those allegations do not identify any particular written statement of Dr. Johnson's or an insider's financial condition as required by the statute. Indeed, the allegations specifically set forth under Count I allege only that the Private Placement Memorandum represented that "Debtor and the enterprise were financially sound, adequately capitalized, free from undisclosed liabilities, and compliant with applicable regulations." Complaint at ¶52. Such generalized allegations fail to identify any specific written financial statement and therefore do not satisfy the requirements of § 523(a)(2)(B)

24. Accordingly, even assuming arguendo that Plaintiffs have adequately alleged an underlying debt, Count I fails to state a plausible claim under either section 523(a)(2)(A) or (B) and should be dismissed.

ii. <u>Section 523(a)(4) (Count II)</u>

25. Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Although not entirely clear, it seems from the Complaint that Plaintiffs are alleging

that the alleged debt is nondischargeable under the first two prongs of section 523(a)(4): for fraud or defalcation while acting in a fiduciary capacity; and for embezzlement.

26. To state a claim for fraud or defalcation while acting in a fiduciary capacity under section 523(a)(4), a plaintiff must allege the existence of an express or technical trust that predates the alleged wrongdoing. *See In re Bazell*, 677 B.R. 836, 847 (Bankr. S.D. Ohio 2026) ("A fiduciary capacity exists where there is an express or technical trust, but not where the trust is an implied trust imposed by operation of law as a matter of equity, and not where the trust is a constructive trust that arises by virtue of alleged wrongdoing.") (citations omitted). "Also, a common law fiduciary relationship does not give rise to a fiduciary capacity for purposes of § 523(a)(4)." *Id.* (citing *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005)).

27. The Complaint contains only the conclusory assertion that Dr. Johnson, "as sole manager of the enterprise, held a position of trust" and had a duty to segregate funds invested by Plaintiffs. Complaint at ¶56. The Complaint identifies no express trust agreement, no trust res, no trustee obligations, and no statutory trust imposed upon Dr. Johnson for the benefit of Plaintiffs. Instead, the allegations establish only that Plaintiffs were investors in Hospital Innovations and that Dr. Johnson served as manager of that entity. Accordingly, Plaintiffs have failed to plead the threshold fiduciary relationship necessary for a claim of fraud or defalcation while acting in a fiduciary capacity.

28. Plaintiffs' cause of action under section 523(a)(4) for embezzlement is likewise insufficiently plead. "A creditor must prove three elements to establish embezzlement: (1) that he entrusted his property to the debtor, (2) that the debtor appropriated the property for a use other

than that for which it was entrusted, and (3) that the circumstances indicate fraud." *Id*. at 848-49 (citing *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 115–16 (B.A.P. 6th Cir. 2007)).

29. Plaintiffs, however, allege that they voluntarily invested capital in Hospital Innovations in exchange for membership interests. Complaint at ¶¶ 9, 74. Once contributed, those funds became assets of Hospital Innovations, not property owned individually by Plaintiffs. The Complaint does not identify any specific funds that remained the property of Plaintiffs and were subsequently appropriated by Dr. Johnson.

30. For these reasons, assuming *arguendo* that Plaintiffs have adequately alleged the existence of a debt owed by Mr. Johnson, Count II should nonetheless be dismissed.

iii. <u>Section 523(a)(6) (Count III)</u>

31. Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). "A debtor 'willfully and maliciously injures a creditor if, acting without just cause or excuse, he knows or is substantially certain that his actions will cause injury.'" *Bazell*, 677 B.R. at 850 (quoting *MarketGraphics Rsch. Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 914 (6th Cir. 2020)).

32. Here, Count III merely alleges that Mr. Johnson "knowingly made materially false representations and omissions" and "intentionally injured Plaintiffs' property interests, membership rights, governance rights, and invested capital through deliberate diversion, concealment, and destruction of enterprise value." Complaint at ¶¶ 62–63. These allegations are entirely conclusory.

33. The Complaint contains no factual allegations demonstrating that Dr. Johnson acted with the specific intent to injure Plaintiffs or with subjective knowledge that injury to Plaintiffs

was substantially certain to occur. Instead, the Complaint alleges that Plaintiffs invested in a healthcare business that later experienced financial distress, incurred substantial losses, obtained emergency financing, lost Medicare participation, ceased operations, and ultimately became insolvent. Complaint at ¶¶ 25–37. Such allegations may describe a failed business enterprise, but they do not plausibly show that Dr. Johnson intended to injure Plaintiffs within the meaning of section 523(a)(6).

34. Even assuming *arguendo* that Plaintiffs have adequately alleged the existence of an underlying debt, Count III fails to state a claim upon which relief can be granted.

iv. <u>Section 523(a)(19) (Count IV)</u>

35. Count IV of the Complaint seeks a determination of nondischargeability under 11 U.S.C. § 523(a)(19). Section 523(a)(19) is a narrow discharge exception applicable to debts arising from securities-law violations, securities fraud, or related misconduct. Specifically, section 523(a)(19) excludes from discharge any debt that:

(A) is for –

> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from—

> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>
> (ii) any settlement agreement entered into by the debtor; or
>
> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor

11 U.S.C. § 523(a)(19).

36. The Complaint, however, contains only the following conclusory paragraph to support Plaintiffs' claim under section 523(a)(19):

> Debtor and Defendants have violated Federal (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934) and/or the State of Ohio securities laws or any regulation or order issued under the Federal or State of Ohio's securities laws; or common law fraud, deceit, or manipulation in connection with the purchase or sale of the enterprise before the petition was filed.

Complaint at ¶66.

37. Thus, Plaintiffs' allegations regarding section 523(a)(19) merely parrots the statutory language. The Complaint identifies no specific federal securities statute, no Ohio securities statute, no SEC rule, and no state administrative regulation allegedly violated by Mr. Johnson. Nor does it identify the elements of any securities-law claim or plead facts demonstrating how those elements have been satisfied.

38. In addition, Plaintiffs in Count IV fail to allege – even in a conclusory fashion – that Dr. Johnson engaged in, or that any debt owed to them is based upon, "common law fraud, deceit, or manipulation in connection with the purchase or sale of any security." Instead, Plaintiffs merely copied the statutory language into paragraph 66 of the Complaint, without any subject (i.e., Dr. Johnson or any debt) being tied to the phrase "common law fraud, deceit, or manipulation in connection with the purchase or sale of the enterprise before the petition was filed." Complaint at ¶66. Plaintiffs even fail to allege that "the enterprise" – the sale of which was not to Plaintiffs but to 360 Healthcare, Inc. (*see* Complaint at ¶¶33, 78) – constitutes a "security" such that section 523(a)(19)(A)(ii) could be implicated, assuming *arguendo* that the other conditions in such subsection are met.

39. The Complaint fails to allege the existence of – and in fact there is not – any judgment, settlement, or other instrument described under section 523(a)(19)(B) that establishes any debt owed by Dr. Johnson for any violation of securities law. Thus, although Count IV is couched as a cause of action to determine dischargeability under 11 U.S.C. § 523(a)(19), Plaintiffs ask the Court "to liquidate and determine liability for securities fraud, which if established renders the debt nondischargeable under 11 U.S.C. §523(a)(19)." Complaint at ¶67.

40. Plaintiffs' mere allegation that Dr. Johonson violated security law fails to meet the pleading standing of Civil Rule 8, much less the heightened standards of Civil Rule 9(b). The allegations in Complaint are therefore woefully insufficient to plead a cause of action for securities fraud and/or nondischargeability 11 U.S.C. § 523(a)(19). Accordingly, assuming *arguendo* that Plaintiffs have adequately alleged that they are owed a debt by Dr. Johnson, Count IV fails to state a plausible claim for relief and must be dismissed.

v. <u>Section 727(a)(2) or (3) (Count V)</u>

41. Assuming *arguendo*, solely for purposes of this Motion, that Plaintiffs are creditors of Dr. Johnson and therefore have standing pursuant to 11 U.S.C. § 727(c) to bring an action for denial of discharge, Plaintiffs nonetheless fail to state a plausible claim for such relief.

42. Denial of a discharge is an extraordinary remendy and courts therefore "construe § 727 'liberally in favor of the debtor[.]'" *In re Wylie*, 119 F.4th 1043, 1045 (6th Cir. 2024) (citing *Wise v. Wise (In re Wise)*, 590 B.R. 401, 433 (Bankr. E.D. Mich. 2018)). "Accordingly, '[t]he reasons for denial of a discharge must be real and substantial rather than technical and conjectural.'" *Id*. (quoting 6 Collier on Bankruptcy ¶ 727.01[4] (Matthew Bender & Co. ed., 16th ed. 2024)).

43. The Complaints asserts that Dr. Johnson should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) or (3). Those sections provide as follows:

> (a) The court shall grant the debtor a discharge, unless—
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727. For purposes

44. Despite the extraordinary remedy Plaintiffs ask this Court to award, Plaintiffs plead their section 727 claims with only a few conclusory sentences. With respect to section 727(a)(2), Plaintiffs simply state that "[w]ithin one year of pre-petition, Debtor transferred and concealed property with the intent to hinder, delay, or defraud Plaintiffs as creditors." Complaint at ¶69. This is a mere recitation of the statutory language and is entitled to no presumption of truth. Plaintiffs fail to identify, for example, what specific property of the debtor was allegedly transferred or concealed; when any such transfer occurred; the value of the property; to whom the property was transferred; whether the property belonged to Dr. Johnson personally or to one of the various non-debtor entities identified in the Complaint; or any facts supporting a plausible inference of actual fraudulent intent.

45. In addition, although the Complaint generally discusses Dr. Johnson's sale of Hospital Innovations to 360 Healthcare, the Complaint is completely devoid of any allegations plausibly suggesting that the transfer was intended to hinder or defraud creditors. Indeed, the Complaint acknowledges that EOH – the operating entity owned by Hospital Innovations – had to obtain emergency funding and reported a $15 million loss in 2024 (Complaint at ¶¶ 25-26), ceased its operations in March 2025 (*id.* at ¶31), and had its Medicare participation terminated in April 2025 (*id.*). Thus, it is hard to imagine how any sale of Dr. Johnson's interests in Hospital Innovations in June 2025 – when EOH was no longer operating, was not entitled to take Medicare, and had incurred catastrophic losses – was intended to make it for difficult for creditors of Dr. Johnson to collect debts. *See Wylie*, 119 F.4th 1046-47 (citing *Wise*, 590 B.R. at 441) (discussing the phrase "intent to hinder" within § 727(a)(2)(A), and stating that the focus is "whether the debtor specifically intended the *consequence* the statute is concerned with: hindering a creditor, i.e., making it more difficult for a creditor to collect a debt") (emphasis in original).

46. Plaintiffs in Count V of the Complaint likewise only assert one conclusory sentence in an attempt to state a claim under section 727(a)(3): the "[d]ebtor failed to maintain records for the enterprise and failed to provide Plaintiffs with the true financial condition of the enterprise." Complaint at ¶70. This allegation is insufficient to state a claim under section 727(a)(3) as a matter of law.

47. First, the Complaint focuses on records of "the enterprise," namely Hospital Innovations and related entities, rather than records concerning Dr. Johnson's personal financial condition. Section 727(a)(3) concerns the debtor's records and the ability of creditors and the trustee to ascertain information regarding the debtor's financial affairs. The alleged failure to

provide investors with company financial reports does not establish that Dr. Johnson failed to maintain adequate records of his own financial condition.

48. Further, the Complaint identifies no specific records that were allegedly missing, destroyed, concealed, or falsified. Plaintiffs do not allege: what books and records were required to be maintained; what records are unavailable; when such records became unavailable; how the records were inadequate; what information cannot be determined because of the alleged deficiencies; or how any purported record-keeping failures have impaired the Chapter 7 trustee's or creditors' ability to relevant information regarding Dr. Johnson's financial affairs. To the contrary, the Complaint acknowledges that financial information was eventually provided in connection with U.S. Citizenship and Immigration Services proceedings. Complaint at ¶24. This allegation undermines any inference that the debtor's financial condition cannot be ascertained from available records.

49. Like with all other counts in the Complaint, the allegations in Count V are entirely conclusory, lack any factual detail, and fail to establish the essential elements of either § 727(a)(2) or § 727(a)(3). Because the Complaint does not plead sufficient facts to support denial of discharge under either statutory provision, Count V should be dismissed.

**D. All causes of action set forth in Count VI likewise should be dismissed.**

50. Count VI – labeled "Fraudulent Transfer, Conversion, Civil Conspiracy or Alter Ego" – combines multiple distinct causes of action and legal theories into a single count. Civil Rule 10, as made applicable to this case pursuant to Bankruptcy Rule 7010, requires "that each claim founded on a separate transaction or occurrence . . . be stated in a separate count or defense." Fed. R. Civ. Pro. 10(b). Count VI is in violation of this rule and should be dismissed for this reason alone.

51. Although consisting of four causes of action or legal theories, Count VI only contains seven paragraphs of generalized allegations directed collectively at "Debtor and Defendants." Complaint ¶¶ 73–79. Plaintiffs never specify whether they seek relief for fraudulent transfer, conversion, civil conspiracy, alter ego liability, or all of the foregoing. Nor do they identify the particular state law under which the claims are being alleged[4], or which defendants are alleged to have committed which acts. Such group pleading fails to provide Mr. Johnson with fair notice of the claims asserted against him or the grounds upon which those claims rest.

52. To the extent Count VI seeks recovery for fraudulent transfers, such claim must fail because, if and to the extent any claim for fraudulent transfer exists, it is property of the bankruptcy estate and only the trustee has authority to bring such claim. *See Hatchett v. United States*, 330 F.3d 875, 886 (6th Cir. 2003) (noting that "the trustee has the exclusive right to bring an action for fraudulent conveyance during the pendency of the bankruptcy proceedings"). In addition, any claim to avoid fraudulent conveyance would generally be brought against the transferee of the asset. *See* Ohio Rev. Code § 1336.08. 360 Healthcare – which is not even a defendant in this adversary proceeding – is the transferee of Dr. Johnson's interest in Hospital Innovations, and thus, even if Plaintiffs had standing to assert a fraudulent transfer claim, such claim is not actionable against Dr. Johnson.

53. If and to the extent Plaintiffs are attempting to state a claim for conversion under Ohio law, Plaintiffs would be required to adequately allege, among other things, that Dr. Johnson wrongfully exercised dominion or control over property belonging to Plaintiffs. *See Girard Techs. Inc. v. Stiles*, 273 N.E.3d 935, 944 (Ohio Ct. App., 7th Dist. 2025) (regarding the elements of conversion). The Complaint alleges that Plaintiffs voluntarily contributed their investment funds

[4] For purposes of arguing for dismissal, Dr. Johnson is analyzing the claims as if they are being asserted under Ohio law.

to Hospital Innovations in exchange for membership interests. Complaint at ¶¶ 9 and 74. Once contributed, those funds became assets of the entity rather than property owned by Plaintiffs individually. The Complaint identifies no specific property belonging to Plaintiffs over which Dr. Johnson exercised wrongful dominion or control. Plaintiffs' conversion claim must fail.

54. Plaintiffs' civil conspiracy theory fairs no better. In Ohio, a claim for civil conspiracy requires "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012). The Complaint does not identify any agreement among the defendants, when such agreement was formed, who participated in it, or what unlawful objective was allegedly pursued. Instead, Plaintiffs simply allege in conclusory fashion that "Debtor and Defendants" engaged in insider transactions, transfers, and commingling of funds. Complaint at ¶¶ 76–79. These allegations are insufficient to plausibly allege a conspiratorial agreement or concerted action.

55. Finally, Count VI fails to state a claim under an alter-ego theory. Alter ego is not an independent cause of action but rather a doctrine used to impose liability after the elements necessary to disregard a business entity's separate existence have been established. Plaintiffs do not allege the elements required to pierce the veil of a limited liability company. They do not plead facts showing that Hospital Innovations lacked a separate existence, that corporate formalities were ignored, that the entity was used to commit a specific fraud against Plaintiffs, or that an injury resulted from misuse of the entity's form. Instead, the Complaint merely alleges in conclusory fashion that Defendants used the enterprise as a "mere instrumentality and alter ego," and that Dr. Johnson comingled funds and caused intercompany transfers. Complaint ¶¶ 76-77. These conclusory statements are insufficient to impose the liability of any entity on Dr. Johnson.

## III. Conclusion.

For the foregoing reasons, Dr. Johnson respectfully requests that all claims in the Complaint against him be dismissed with prejudice, and that the Court order such further relief in favor of Dr. Johnson as is just and proper.

Respectfully submitted,

*/s/ Philip K. Stovall*

Philip K. Stovall (0090916)
**HAHN LOESER & PARKS LLP**
65 E. State Street, Suite 2500
Columbus, Ohio 43215
Phone: (614) 221-0240
Fax: (614) 221-5909
E-mail: pstovall@hahnlaw.com
*Counsel to Defendant John A. Johnson*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing *Motion of John A. Johnson to Dismiss Complaint* was served on the date of filing electronically through the court's ECF System on all ECF participants registered in this case at the email address registered with the court.

*/s/ Philip K. Stovall*
Philip K. Stovall (0090916)