IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE:<br><br>JOHN A. JOHNSON,<br>AND LATHA JOHNSON<br><br>Debtors. | CASE NO. 2:26-bk-50434<br><br>CHAPTER 7<br><br>JUDGE TIFFANY STRELOW COBB<br><br>**ADV. PROC. NO. 26-02039** |
| DHEMRE *et al.*<br><br>Plaintiffs<br><br>vs.<br><br>JOHNSON, *et al*.<br><br>Defendants. | **PLAINTIFFS' RESPONSE TO DEBTOR JOHN A. JOHNSON'S MOTION TO DISMISS** |

Plaintiffs, Ashish Dhemre, Elisheba Cingapagu, Shital Vikramsinh Katkar, Raj Shekhar, Le Thi Nguyet, Vo Thanh Tung, Tran Xuan Son, Stephen Van Der Walt, Sirisha Vasantha, Kartikkumar Trivedi and Jan Rutgers ("Plaintiffs") file this Response to Defendant Debtor John A. Johnson's ("Debtor") Motion to Dismiss the Complaint in the above-entitled adversary proceeding.

## I. INTRODUCTION

Debtor's Motion to Dismiss attempts to reduce this complex case to a simple proposition: arguing that because Plaintiffs' investments in Hospital Innovations, LLC ("Hospital Innovations") were made pursuant to the EB-5 investor program and were not guaranteed loans, Plaintiffs cannot hold claims against Debtor individually. That is not the law, and it is not what Plaintiffs allege in the Complaint.

The Complaint does not contend that Debtor is personally liable merely because Plaintiffs invested capital in Hospital Innovations. Rather, Plaintiffs allege that Debtor engaged in independent wrongful conduct, including fraud, misrepresentations, breaches of fiduciary duties,

wrongful transfers, conversion, and other misconduct that caused Plaintiffs to suffer damages and gave rise to claims against Debtor personally. *See* Complaint at ¶¶ 12 to 43, Counts I, II, III, IV, V and VI. Those allegations give rise to independent causes of action against Debtor personally and therefore constitute "claims" and "debts" within the meaning of 11 U.S.C. §§ 101(5) and 101(12), regardless of the nature of Plaintiffs' original capital investment.

In or around February or March 2022, each Plaintiff entered into agreements with Hospital Innovations in reliance on representations made by Debtor. <u>Each Plaintiff</u> invested $500,000.00 along with the administrative fee of $60,000.00 resulting in investments exceeding $6 million. *See* Complaint at ¶¶ 9, 11, 12 and 13. Hospital Innovations was formed by Debtor to finance the development and operation of a hospital providing mental health and substance use disorder services. *Id.* at ¶ 10. Hospital Innovation's operations were conducted by Debtor through its wholly owned subsidiaries, Access Martins Ferry LLC and East Ohio Hospital LLC **(collectively, "the enterprise").** *Id.* at ¶ 6, *emphasis added*.

From 2022 to 2025, Debtor served as the manager and/or agent of the enterprise and exercised exclusive control as no special manager was ever appointed by Debtor even though the investment capital required an independent Special Manager whose written consent was required before any sale, transfer, dissolution, or bankruptcy filing of the enterprise. *See* Complaint ¶ 21 and 12(d) respectively. Plaintiffs' EB-5 investments were represented by Debtor to be deployed into the enterprise in compliance with representations made both to Plaintiffs and to the United States Citizenship and Immigration Services ("USCIS") pursuant to the EB-5 program. *See* Complaint ¶¶ 12-14; *see also* Plaintiffs' timely filed Proofs of Claim. Without notice to Plaintiffs, Debtor subsequently transferred or sold East Ohio Hospital LLC and/or Hospital Innovations to 360 Healthcare, Inc. in or about June 2025, after East Ohio Hospital had ceased operations in March 2025. *Id*. at ¶¶ 33-36.

Plaintiffs possess standing to pursue these claims. The Bankruptcy Code broadly recognizes the right of parties in interest to appear and be heard in bankruptcy proceedings. 11 U.S.C. § 1109(b). Article III standing requires only (1) an injury in fact, (2) causation, and (3) redressability. *In re MF Global Holdings Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Here, Plaintiffs have alleged concrete and particularized injuries directly resulting from Debtor's misconduct, including, among other things:

- material misrepresentations and omissions concerning the investment in 2022;
- misuse and co-mingling of EB-5 funds;
- imposition of a predatory debt structure through cognovit promissory notes benefiting Debtor;
- failure to provide required financial disclosures and accountings;
- failure to disclose the transfer or sale of critical project assets;
- unilateral amendment of the Operating Agreement after Plaintiffs invested;
- failure to appoint the independent Special Manager required under the original Operating Agreement;
- insider transactions and transfers benefiting Debtor or members of his family; and
- the sale of Hospital Innovations and/or its assets for promissory notes rather than fair cash consideration.

*See* Complaint at ¶¶ 14-43.

The Complaint further alleges that Plaintiffs suffered damages as a result of wrongful and fraudulent transactions and conduct involving Debtor, among other things:

(a) material representations and omissions concerning the investment and the enterprise;

(b) the use, transfer, or disposition of enterprise assets;

(c) restructuring ownership and operational arrangements without notice to Plaintiffs;

(d) transfers of assets and ownership interests for inadequate or improper consideration;

(e) Debtor's use of cognovit promissory notes, personal guarantees, and related financing arrangements that subordinated or impaired Plaintiffs' interests;

(f) self-dealing and conduct undertaken for Debtor's personal benefit; and

(g) coordinated conduct involving entities controlled by Debtor and members of his family. *Id*. These allegations plainly assert independent tort claims against Debtor and are not merely derivative claims arising from Plaintiffs' status as equity investors.

Moreover, Debtor's legal premise is contrary to controlling U.S. Supreme Court authority. In *Cohen v. de la Cruz*, 523 U.S. 213 (1998), the U.S. Supreme Court held that § 523(a)(2)(A) excepts from discharge all liability arising from fraud, including treble damages, attorney's fees, and costs. The Court explained that § 523(a)(2)(A) broadly encompasses "any debt" arising from money, property, services, or credit obtained through fraud. *Id*.; *see also Field v. Mans*, 516 U.S. 59 (1995). Accordingly, a debt arising from fraudulent conduct need not originate from a traditional loan transaction. *Id.*

Here, Plaintiffs allege that Debtor fraudulently induced and thereafter misused millions of dollars of the EB-5 investment funds through fraudulent or false representations, concealment, self-dealing, and wrongful transfers. Those allegations, if proven, establish nondischargeable debts under § 523 regardless of whether Plaintiffs' original transaction was structured as an equity investment rather than a loan. *Id*.

The Bankruptcy Code has long prohibited debtors from discharging liabilities arising from fraud, reflecting its fundamental policy of providing relief only to the "honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217–18, 118 S. Ct. 1212, 1216 (1998) (quoting *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659–60 (1991)). At this preliminary stage, before

any discovery has occurred, Debtor cannot cloak himself with that characterization. To the contrary, Debtor's own bankruptcy Schedules and financial disclosures reveal a complex web of transactions, including numerous promissory notes, transfers among related entities, and apparent commingling of accounts.

Significantly, Debtor has also identified Plaintiffs on Schedules E/F as "unsecured creditors", thereby acknowledging the existence of obligations owed to them. Thus, the Court must accept Plaintiffs' factual allegations and Debtor's Schedules as true and draw all reasonable inferences in Plaintiffs' favor. Whether Plaintiffs ultimately prevail is a question for summary judgment or trial—not a Rule 12(b)(6) motion. Because the Complaint plausibly alleges independent tort claims against Debtor and corresponding debts arising from that misconduct, Debtor's Motion to Dismiss should be denied in its entirety.

## II. <u>LEGAL STANDARD</u>

A motion under Rule 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012, tests the sufficiency of the Complaint, not the merits of Plaintiffs' claims. The Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. A complaint needs only to contain sufficient factual matter to state a claim that is plausible on its face. The Court must consider the allegations collectively and, in the light, most favorable to Plaintiffs.

Here, Debtor's Motion to Dismiss improperly asks the Court to resolve factual and legal issues concerning the nature of Plaintiffs' EB-5 investments, Debtor's role in the underlying transactions, the transfer of assets and interests, and the extent of Debtor's personal liability. Those issues cannot properly be resolved on the Motion to Dismiss where the Complaint alleges facts that, if proven, would establish personal liability and nondischargeable debts.

## III. LAW AND ARGUMENT

### A. PLAINTIFFS PLEAD PERSONAL MISCONDUCT INDEPENDENT OF EB-5 CAPITAL INVESTMENT

Debtor's principal argument is that because the EB-5 investments constitute at-risk capital and are not loans, Plaintiffs cannot establish that Debtor owes them a debt. The argument fails because it mischaracterizes Plaintiffs' claims. Plaintiffs do not allege that Debtor is liable simply because Plaintiffs invested in the enterprise. Plaintiffs allege that Debtor engaged in independent misconduct that created personal liability to Plaintiffs. *See* Complaint at ¶¶ 12 to 43, Counts I, II, III, IV, V and VI. Thus, the Complaint alleges that Plaintiffs invested substantial capital in the enterprise through the EB-5 program, money or property obtained by false pretenses or fraud, that Debtor controlled or otherwise exercised sole authority over the relevant entities and transactions, and that Plaintiffs' losses resulted from Debtor's misconduct that included fraud, misrepresentation, breach of fiduciary duty, wrongful transfers, conversion, civil conspiracy, and related conduct. *Id*.

The Bankruptcy Code defines a "claim" broadly as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). A "debt" is liability on such a claim. 11 U.S.C. § 101(12). Accordingly, Plaintiffs have alleged sufficient facts that plausibly establish that Debtor became personally liable to Plaintiffs under applicable law because of his own conduct.

### B. THE COMPLAINT ALLEGES INDEPENDENT TORTIOUS CONDUCT GIVING RISE TO DEBTOR'S PERSONAL LIABILITY

Debtor argues that Plaintiffs have not adequately identified the legal basis for their claims against him individually. That argument ignores the allegations of the Complaint and improperly demands evidentiary detail beyond what is required under Rule 8. The Complaint alleges that

Debtor was not merely a passive investor or unrelated third party. Plaintiffs allege that Debtor owned, controlled and formed multiple entities in the underlying healthcare enterprise and that he participated in the transactions and conduct giving rise to Plaintiffs' claims.

**The Complaint contains specific factual allegations related to Debtor:**

**14.** At the time the PPM [Private Placement Memorandum] was issued and Plaintiffs invested in the enterprise, **Debtor was the sole manager of the enterprise and failed to disclose the following material facts:**

a. Debtor filed for personal bankruptcy protection in August 2005;

b. Debtor entered into a $425,000 settlement with the U.S. Department of Justice arising from "**false**" claims in the healthcare context;

c. Debtor's personal "**cognovit**" promissory notes secured by East Ohio Hospital;

**d. Debtor never filled the Special Manager position in Defendant Hospital Innovations' Original Operating Agreement Section 5.1.**[1]

**15. These facts materially bore on Debtor's financial condition, credibility, and fitness to sponsor and manage the Plaintiffs' EB-5 investment in the enterprise.**

**16.** These omissions rendered the PPM and accompanying financial representations materially false and/or misleading when made.

**17.** In good faith Plaintiffs relied on the PPM and associated written materials in deciding to invest their capital in Hospital Innovations.

**18.** Debtor knew of his own prior bankruptcy and DOJ settlement at the time the PPM was drafted and disseminated.

**19.** Debtor and Defendants intentionally omitted these facts from the offering documents, despite their obvious materiality to Plaintiffs and the other EB-5 investors evaluating both immigration ramifications and financial risk.

**20.** Debtor's and Defendants' omissions were not accidental or negligent but were made with the intent to induce reliance by Plaintiffs and other EB-5 investors.

**21.** After Plaintiffs invested in Hospital Innovations, Debtor exercised exclusive control over the enterprise as no special manager was ever appointed by Debtor.

**22.** In July 2022, without any notice or consent or signatures of Plaintiffs, Debtor unilaterally executed another Amended and Restated Operating

[1] The Original Operating Agreement will be provided after the confidentiality order is signed by the parties and Court.

Agreement on July 14, 2022 (the "Amended Operating Agreement") to add $32,000,000 of Class B priority member in Hospital Innovations.

**23.** In addition, Debtor eliminated the entire special manager framework from the Original Operating Agreement signed by the parties per Sections 4.12 and 5. Consequently, the only independent governance check on Debtor's authority requiring consent from Plaintiffs before any sale, transfer, dissolution, or bankruptcy was fraudulently deleted by Debtor from the Amended Operating Agreement without Plaintiffs' knowledge or consent.

**24.** From 2022 onward, Debtor or Defendants provided no annual financial reports or profit and loss statements to Plaintiffs for tax years 2023 or 2024 even though the Original Operating Agreement signed by the parties required it. Debtor or Defendants finally provided some information when the U.S. Citizenship and Immigration Services ("USCIS") issued a request for evidence.

**25.** In October 2024, the same month USCIS approved Plaintiffs' I-526 immigration petitions (first step)[2], Debtor and his son, Defendant Nithin Johnson (then-acting Chief Operating Officer), caused Hospital Innovations or East Ohio Hospital to obtain two emergency loans totaling $2,000,000 to cover payroll and critical operating expenses - evidencing acute financial distress.

**26.** Simultaneously, without any notice or disclosure to Plaintiffs, East Ohio Hospital reported a loss of $15 million in 2024.

**27.** Thus, Debtor did not disclose the emergency loans, the personal guarantees or notes, or the severe financial deterioration to Plaintiffs, despite a continuing duty to disclose material facts affecting their investment in the enterprise.

**28.** While Defendant East Ohio Hospital was incurring catastrophic losses, Debtor transferred at least $276,790.80 over the course of various dates to his daughter, Defendant Neethi Johnson, under the description of "salary and draws".

**29.** On or about January 28, 2025, the Centers for Medicare & Medicaid Services ("CMS") formally notified Debtor that his entities were out of compliance with fundamental federal participation requirements.

**30.** CMS subsequently issued a final termination letter on March 25, 2025 because the deficiencies identified in the January 2025 notice were not corrected.

---

[2] Second Step (Form I-829) of the immigration petitions is still pending.

**31. East Ohio Hospital abruptly ceased operations in March 2025, and Medicare participation was terminated effective April 17, 2025.**

**32. Debtor did not inform Plaintiffs of the CMS findings, the impending termination from Medicare participation, or East Ohio Hospital's closure.**

**33. In June 2025, while insolvent or rendered insolvent thereby, Debtor executed a transaction purporting to transfer his interests in, and control over, Hospital Innovations to Harold Ramsey and a newly formed shell entity, 360 Healthcare, Inc. ("360 Healthcare").**

**34. 360 Healthcare was formed approximately one day before the transaction and had no operating history, assets, or revenue.**

**35. The stated consideration for this transaction was an $11.5 million promissory note, with no cash paid at closing. This transaction was not disclosed to Plaintiffs or the other EB-5 investors despite the enterprise having been capitalized with approximately $9 million of investor equity, and despite unresolved liabilities, regulatory exposure including USCIS obligations, and potential securities compliance deficiencies.**

**36.** Debtor and Defendants Hospital Innovations executed this transaction without the knowledge or consent of Plaintiffs.

**37.** The economic substance of the transaction was the transfer of a valuable enterprise in exchange for an uncollectable note (or notes) that lacked reasonably equivalent value, involved no cash consideration, and left the enterprise insolvent.

**38.** After the purported transfer, Debtor continued to exercise control over East Ohio Hospital's receivables and caused funds to be diverted to undisclosed accounts.

**39.** These actions were inconsistent with any bona fide sale and demonstrated Debtor's continuing scheme to hinder, delay, and defraud Plaintiffs and other creditors.

**40.** On January 30, 2026, Debtor filed a voluntary Chapter 7 petition in this Court.

**41. In sworn bankruptcy or state court filings, Debtor:**

e. Disclosed the sale of his interest in Hospital Innovations only in an addendum without stating the purchase price;

f. Characterized approximately $19 million in promissory notes as likely uncollectible; and

g. Disclosed insider transfers during periods when Hospital Innovations and/or East Ohio Hospital were experiencing severe financial distress and substantial operating losses.

**42.** Debtor's bankruptcy filings further revealed the prior 2005 bankruptcy that had been concealed from Plaintiffs and the other EB-5 investors at the time of investment.

**43.** Plaintiffs reasonably relied on Debtor's written representations and omissions in the PPM and related offering materials in deciding to invest $560,000 each in the enterprise. Plaintiffs acted in good faith at all times and had no knowledge of any misconduct described in this complaint prior to 2025.

*See* Complaint at ¶¶ 14 to 43, *emphasis added*.

These allegations in the Complaint are not merely a claim for repayment of the EB-5 investment. *Id*. They are allegations that Debtor personally engaged in wrongful conduct that caused Plaintiffs' economic harm. *Id*. Whether Plaintiffs can ultimately prove each element of their claims is a matter for discovery and, if necessary, trial. At this stage, Plaintiffs have sufficiently alleged the existence of claims against Debtor.

**C. THE COMPLAINT ADEQUATELY ALLEGES THE EXISTENCE OF A DEBT FOR PURPOSES OF SECTION 523**

"A Chapter 7 debtor need not actually procure money or property for himself for debt to be nondischargeable based upon misrepresentation or fraud; any benefit to a debtor is sufficient for finding that the debtor obtained [money] or property within meaning of Bankruptcy Code." *In re Spicer*, Bkrtcy.D.Dist.Col.1993, 155 B.R. 795, *subsequently affirmed* 57 F.3d 1152, 313 U.S.App.D.C. 67, *certiorari denied* 116 S.Ct. 701, 516 U.S. 1043, 133 L.Ed.2d 658.

More importantly, the U.S. Supreme Court has recognized that the nondischargeability provisions of § 523(a) applies to the full scope of liability arising from the relevant misconduct. *Cohen v. de la Cruz*, 523 U.S. 213, 218–23 (1998). Thus, Debtor's circular argument that the original EB-5 investment was not a debt does not resolve whether Debtor received Plaintiffs' money or funds through fraud, false pretenses or other actionable misconduct. The Complaint

clearly alleges that "Plaintiffs had no independent ability to verify the information supplied by Debtor and had no knowledge of any misconduct described in this complaint prior to 2025". *See* Complaint at ¶ 13. Further, the Complaint alleges that Debtor failed to disclose "Debtor's personal **cognovit** promissory notes secured by East Ohio Hospital." *Id*. at ¶ 14, emphasis added. Thus, without discovery, it is not possible to know how Debtor treated, accounted for, or used millions of dollars of Plaintiffs' EB-5 investment on the enterprise's books and/or records in 2022, 2023 and 2024. At minimum, the Complaint alleges a plausible factual basis for Plaintiffs' contention that Debtor became personally liable for losses caused by his own tortious conduct. *See* Complaint. The Court therefore cannot dismiss Counts I through IV based on the contention that no debt exists.

**D. COUNTS I, II, III, IV: PLAINTIFFS HAVE ADEQUATELY ALLEGED CLAIMS UNDER SECTION 523(A)**

Debtor's Motion also argues that Plaintiffs have failed to plead the elements of the individual nondischargeability claims. *That argument improperly evaluates the allegations in isolation and ignores the "set of common facts" incorporated by reference into each Count.*

1. **Section 523(a)(2), COUNT I**

The language of Section 523(a)(2) provides for nondischargeability of debts "for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud…." Thus, Section 523 does not provide that only "debts" obtained by false pretenses or actual fraud are nondischargeable. It provides that money and/or property obtained by false pretenses or fraud are not dischargeable.

Here, the EB-5 investments are "money" obtained by false pretenses or actual fraud. *See* § 523(a)(2). Plaintiffs allege that they invested substantial money based upon false representations made by Debtor concerning the enterprise in the year 2022, they identify the misuse and treatment of invested funds, Debtor's failure to appoint the Special Manager, the mismanagement in the operation of the enterprise, post-transfer control over receivables, diversion to undisclosed

accounts and the sale of Hospital Innovations by Debtor lacked reasonably equivalent value and involved no cash consideration, leaving the enterprise insolvent. *See* Complaint. Plaintiffs suffered financial losses for which Debtor is responsible because of his tortious conduct. *See* Complaint at ¶¶ 14 to 44. Thus, the Complaint alleges the time and place of Debtor's false pretenses related to the 2022 PPM, unilaterally amending original operating agreement with no notice to Plaintiffs to remove the Special Manager provision, October 2024 emergency loans, January to March 2025 CMS actions, and the total loss of their EB-5 investment in June 2025 because the enterprise was sold by Debtor for no cash consideration and without notice to Plaintiffs. *See* Complaint at ¶¶ 14 to 44.

Therefore, Debtor's reliance on *In re Rembert,* 141 F.3d 277, 282 (6th Cir. 1998) is misplaced because that case was decided after trial, not on a Rule 12(b)(6) motion. Fraudulent intent [or false pretenses] is ordinarily established through circumstantial evidence and the totality of the circumstances. *Id*. The Sixth Circuit in *In Re Rembert* acknowledged that "a debtor's fraudulent intent is extremely difficult to establish. Clearly, debtors have an incentive to make self-serving statements and will rarely admit an intent not to repay" and concluded that "a debtor's intention-or lack thereof-must be ascertained by the totality of the circumstances" or "some courts have adopted a nonexclusive list of twelve factors to consider when determining whether a debtor intended to repay the debt." *Id*.

Here, at the pleading stage, Plaintiffs are not required to prove each and every legal element of alleged false pretenses or false representations or fraud. The Complaint must be read as a whole, and the factual allegations provide Debtor fair notice of the nature of the alleged misconduct.

To the extent Debtor contends that additional factual detail is required under Rule 9(b), the Complaint has identified the time, place, and content of the alleged misrepresentations by Debtor

who was the sole or primary manager of the enterprise. *See* Complaint at ¶¶ 12 to 43 and 46 to 52, respectively.

Alternatively, the appropriate remedy is not dismissal with prejudice. Plaintiffs should be permitted to amend the Complaint to provide any additional particularity the Court determines necessary.

**2. Section 523(a)(4), COUNT II**

Section 523(a)(4) applies to debts arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Plaintiffs allege (i) fraud or defalcation while acting in a fiduciary capacity based on Debtor's exclusive control over investor funds and the enterprise assets and the governance duties owed under the operating agreement and PPM offering documents, and, in the alternative, (ii) embezzlement or larceny based on diversion of the enterprise funds and receivables to insiders and undisclosed accounts. *See* Complaint ¶¶ 14 to 44 and Count II. These fact-intensive issues cannot be resolved on a motion to dismiss.

**3. Section 523(a)(6), COUNT III**

Section 523(a)(6) applies to debts arising from willful and malicious injury by a debtor. Here, the Complaint alleges that Debtor intentionally concealed material information, diverted the enterprise assets, executed unauthorized insider transactions, and transferred the enterprise in 2025 while insolvent to hinder Plaintiffs' investments. These allegations describe intentional misconduct—not mere negligence—and support a claim for willful and malicious injury.

**4. Section 523(a)(19), COUNT IV**

Plaintiffs' claims arise from misstatements and omissions in connection with the purchase of EB-5 investment interests offered through a PPM and related materials, including the DOJ settlement, cognovit notes, and the post-investment removal of required Special Manager protections — each material to a reasonable investor. *See* Complaint ¶¶ 9 to 44. At the pleading

stage, these allegations state a claim under § 523(a)(19) and the court should not dismiss the claim at this stage based on Debtor's mischaracterization of the EB-5 investment as an ordinary capital investment with no strings attached.

**E. COUNT V, PLAINTIFFS HAVE STANDING TO OBJECT TO DEBTOR'S DISCHARGE**

Debtor argues that Plaintiffs lack standing to pursue Count V under § 727 because they have not established that they are "creditors." That argument fails for the same reason as Debtor's argument concerning Counts I through IV. Standing under § 727 turns on whether Plaintiffs hold a "claim," not whether they have already obtained a judgment. Because the Complaint alleges tort claims against Debtor, Plaintiffs qualify as creditors under §§ 101(5) and 101(10); therefore, have standing to object to discharge. Additionally, Debtor's own Schedules E/F identify Plaintiffs as unsecured creditors or claimants. Thus, Plaintiffs have standing to pursue claims under § 727(c)(1).

Moreover, Debtor's argument would improperly require Plaintiffs to establish the ultimate merits of their claims before they could challenge a discharge. To accept Debtor's argument would require Plaintiffs to seek a judgment in this court that they are owed a debt from Debtor. In the meantime, Plaintiffs would have to extend the time to object to Debtor's § 727 discharge. After obtaining the judgment that they are owed a debt, then Plaintiffs would have to file a second adversary proceeding seeking to deny Debtor the § 727 discharge. That would cause this Court to have to conduct two adversary proceedings and possibly two trials. That would be a complete waste of this Court's judicial resources.

The Bankruptcy Code does not impose such a requirement. A disputed or contingent claim is still a claim under § 101(5), and a creditor or claimant holding such a claim may pursue the remedies available under the Bankruptcy Code. Because of Debtor's bankruptcy filing, Plaintiffs have no other remedy except pursuing their claims in bankruptcy court.

### F. COUNT VI SHOULD NOT BE DISMISSED BECAUSE THE CLAIMS ARE SUFFICIENTLY PLEADED AND RULE 10 DOES NOT REQUIRE DISMISSAL

Defendant argues that Count VI improperly combines multiple legal theories in violation of Rule 10. Rule 10(b) concerns the organization of pleadings and provides that claims founded on separate transactions or occurrences should be stated in separate counts when doing so would promote clarity. It does not create a substantive bar to pleading related legal theories together, particularly where the claims arise from a common course of conduct and common nucleus of operative facts. Here, Plaintiffs' claims arise from related transactions involving the same enterprise, the same defendants, the same investment structure, and the same alleged course of misconduct. *See* Complaint.

At most, if the Court determines that the claims should be separated into distinct counts, Plaintiffs should be granted leave to amend the Complaint. Dismissal is not warranted merely because the Complaint could be organized differently. Nor are the allegations conclusory. The Complaint identifies the relevant entities, the EB-5 investments, the financial collapse of the enterprise, the transactions involving Debtor, insider transactions and related parties, and the tortious conduct that Plaintiffs contend caused their losses. These allegations provide sufficient notice of the claims and the factual basis upon which they rest.

### G. PLAINTIFFS SHOULD BE PERMITTED TO AMEND IF THE COURT DETERMINES THAT ADDITIONAL PARTICULARITY IS REQUIRED

Even if the Court concludes that additional factual particularity is required under Rules 8, 9(b) or 10, dismissal with prejudice would be inappropriate. Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires, particularly where any deficiency concerns pleading specificity rather than the legal viability of the claims.

**IV. <u>CONCLUSION</u>**

At the motion-to-dismiss stage, the Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiffs' favor. Plaintiffs are not required to prove their claims in the Complaint. Nor are Plaintiffs required to establish the ultimate amount of their damages or prevail on their underlying state-law claims before seeking a determination that the resulting debt is nondischargeable.

Debtor's Motion to Dismiss improperly assumes that Plaintiffs' claims arise solely from the fact of their EB-5 investments. The Complaint, however, alleges that Debtor personally engaged in fraud and other wrongful conduct that caused Plaintiffs to suffer damages and created claims against him individually. Whether Plaintiffs can ultimately prove those claims is not before the Court. The Complaint clearly alleges the existence of claims and debts against Debtor Johnson and provides sufficient notice of the factual basis for Plaintiffs' claims under §§ 523 and 727. Accordingly, Plaintiffs respectfully request that the Court deny the Motion to Dismiss in its entirety.

In the alternative, Plaintiffs request leave to amend any portion of the Complaint that the Court determines fails to satisfy the applicable notice pleading standards.

Respectfully submitted,
BRENNAN, MANNA AND DIAMOND, LLC.

By: ___/s/ Duriya Dhinojwala___________
Duriya Dhinojwala (0074982)
Matthew R. Duncan (0076420)
75 E. Market Street, Akron, OH 44308
Phone: 330-253-5790; Fax: 330-374-6896
Email: dd@bmdllc.com
mrduncan@bmdllc.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of *Plaintiffs' Response to Debtor's Motion to Dismiss* was served on the date of filing electronically through the court's ECF System on all ECF participants registered in this case at the email address registered with the court.

/s/Duriya Dhinojwala
Duriya Dhinojwala (0074982)