**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 2:26-bk-50434 |
| JOHN A. JOHNSON,<br>AND LATHA JOHNSON | ) | CHAPTER 7 |
| | ) | JUDGE TIFFANY STRELOW COBB |
| Debtors. | ) | **ADV. PROC. NO. 26-02039** |
| DHEMRE *et al.* | ) | |
| Plaintiffs | ) | **PLAINTIFFS' MOTION TO WITHDRAW THE REFERENCE** |
| vs. | ) | |
| JOHNSON, *et al*. | ) | |
| Defendants. | ) | |

Plaintiffs Ashish Dhemre, Elisheba Cingapagu, Shital Vikramsinh Katkar, Raj Shekhar, Le Thi Nguyet, Vo Thanh Tung, Tran Xuan Son, Stephen Van Der Walt, Sirisha Vasantha, Kartikkumar Trivedi, and Jan Rutgers ("Plaintiffs"), by and through undersigned counsel, respectfully move this Court pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a) for an order withdrawing the reference of the above-captioned adversary proceeding and having the case adjudicated by the United States District Court for the Southern District of Ohio. Withdrawal is warranted because this adversary proceeding presents factually intertwined controversy involving claims against both the Debtor John Johnson ("Debtor") and multiple non-debtor defendants, Neethi Johnson, Nithin Johnson, Hospital Innovations LLC, Martins Ferry LLC and East Ohio Hospital LLC (collectively "Defendants"). arising from the same underlying transactions and course of conduct. Plaintiffs' claims against these parties arise from the same transactions, investment agreements, representations, corporate records, financial transactions, witnesses, and alleged course of misconduct.

The claims against the non-debtor Defendants are not created by the Bankruptcy Code. They arise principally under state and federal non-bankruptcy law and could exist independently of the bankruptcy case. At least two non-debtor Defendants, Nithin Johnson and Neethi Johnson, have affirmatively challenged the Bankruptcy Court's subject-matter jurisdiction over the claims against them. Thus, the Bankruptcy Court's ability to finally adjudicate the entire controversy is disputed, while this Court possesses the authority to adjudicate all claims and all parties in one proceeding.

Moreover, the Complaint implicates substantial federal-law issues arising outside Title 11, including federal law governing the EB-5 immigrant investor program and, to the extent applicable to the pleaded claims, federal securities law. To the extent the Court determines that resolution of the proceeding requires substantial and material consideration of federal non-bankruptcy law within the meaning of § 157(d), **mandatory withdrawal** is warranted.

Alternatively, and independently, ample "cause" exists for **permissive withdrawal** under § 157(d). The core/non-core distinction, the presence of multiple non-debtor defendants, the Bankruptcy Court's disputed authority to enter final judgment, judicial economy, avoidance of duplicative proceedings and inconsistent rulings, conservation of the parties' and judiciary's resources, and the early procedural posture of the case all strongly favor withdrawal.

For these reasons, Plaintiffs respectfully request that the Court grant this Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiffs are investors who entered into agreements with Defendant Hospital Innovations, LLC ("Hospital Innovations") in or around February and March 2022 in connection with the EB-5 immigrant investor program.

2. Hospital Innovations was formed in Ohio by Debtor in the year 2022 to finance the development and operation of a hospital providing mental-health and substance-use-disorder services. *See* Complaint. Hospital Innovations conducted its operations through its wholly owned subsidiaries, Access Martins Ferry LLC and East Ohio Hospital LLC (collectively, the "Enterprise"). *See* Complaint ¶¶ 6, 10.

3. Each Plaintiff invested $500,000, together with a $60,000 administrative fee, resulting in aggregate investments exceeding $6 million. *Id.* at ¶¶ 9, 11–13.

4. At all relevant times, Debtor served as the primary manager of the Enterprise and exercised substantial control over its operations. Debtor's wife, Co-Debtor Latha Johnson, served as the statutory agent for Hospital Innovations per the Ohio Secretary of State's corporate records.

5. Debtor represented to Plaintiffs that the Enterprise would be capitalized through approximately $9 million in equity, $19.9 million in financing, and approximately $10 million in governmental funding. *See* Complaint ¶ 10.

6. Plaintiffs' investments were represented as being deployed into the Enterprise in accordance with representations made to Plaintiffs and to the United States Citizenship and Immigration Services ("USCIS") concerning the EB-5 program. *See* Complaint ¶¶ 12–14; *see also* Plaintiffs timely filed Proofs of Claim.

7. Plaintiffs allege that, contrary to those representations and without adequate disclosure to Plaintiffs, Defendants engaged in a course of conduct involving, among other things, fraudulent representations and omissions, improper transfers or insider transactions, conversion, misuse and commingling of funds, and other wrongful conduct that damaged Plaintiffs.

8. Plaintiffs further allege that Debtor subsequently transferred or sold Hospital Innovations and/or East Ohio Hospital to 360 Healthcare, Inc. in or around June 2025, after East Ohio Hospital had ceased operations in March 2025. *See* Complaint ¶¶ 33–36.

9. On January 30, 2026, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Bankruptcy Case No. 2:26-bk-50434.

10. Plaintiffs thereafter commenced this adversary proceeding, asserting claims against Debtor and other defendants arising from the same underlying transactions and course of conduct.

11. The Complaint asserts claims including, but not limited to, nondischargeability of debt against Debtor, fraudulent transfer, misrepresentation, omissions, wrongful transfers, conversion, alter ego and related claims against Debtor and non-debtor Defendants. *See* Complaint ¶¶ 12–43, Counts I–VI.

12. Importantly, the Complaint does not seek to impose liability upon the non-debtor defendants merely because they are associated with Debtor or Hospital Innovations. Rather, Plaintiffs allege that the non-debtor Defendants engaged in their own independent wrongful conduct that caused Plaintiffs' damages.

13. Defendants Neethi Johnson and Nithin Johnson have challenged the Bankruptcy Court's jurisdiction over the claims asserted against them. *See* Defendants' Motion to Dismiss, Doc. 25 at p.2.

14. Their jurisdictional challenge creates a substantial procedural problem if the adversary proceeding remains before the Bankruptcy Court because the claims against Debtor and the claims against the non-debtor Defendants arise from the same transactions, witnesses, documents, representations, and alleged misconduct, yet the Bankruptcy Court may not be able to enter final judgment on all claims against all parties.

15. Plaintiffs therefore seek withdrawal of the reference so that the entire controversy may be adjudicated by the Southern District Court of Ohio in a single proceeding.

**II. LEGAL STANDARD**

16. District courts have original jurisdiction over bankruptcy cases and civil proceedings arising under Title 11 or arising in or related to cases under Title 11. 28 U.S.C. § 1334(a), (b).

17. Federal Rule of Bankruptcy Procedure 5011(a) governs motions for withdrawal of the reference. Pursuant to 28 U.S.C. § 157(a), a district court may refer bankruptcy cases and proceedings to bankruptcy judges. Section 157(d) expressly authorizes the district court to withdraw the reference, in whole or in part, on its own motion or on timely motion of a party, for cause shown. 28 U.S.C. § 157(d).

18. **Mandatory Withdrawal**. Section 157(d) provides for mandatory withdrawal when the district court determines that resolution of the proceeding requires consideration of both Title 11 and another federal law regulating organizations or activities affecting interstate commerce. *In re Baldwin-United Corp*., 47 B.R. 898, 899 (S.D. Ohio 1984).

19. **Permissive Withdrawal**. The district court may withdraw partially or totally a case referred to the bankruptcy court, upon its own motion or upon timely motion of a party, for cause shown. 28 U.S.C. § 157(d). Considerations include: (1) uniformity in bankruptcy administration; (2) reduction of forum shopping and confusion; (3) fostering economical use of debtors' and creditors' resources; and (4) expediting the bankruptcy process. *In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990); *see also Keystone Oncology, LLC v. Cohen (In re Equimed, Inc.)*, 259 B.R. 269, 273 (D. Md. 2001) (additional factor: equitable issues are posed, not requiring a jury trial, but falling within the traditional equitable powers of a bankruptcy judge); *compare Hassett v. Banc Ohio Nat'l*

*Bank (In re CIS Corp.)*, 172 B.R. 748 (S.D.N.Y. 1994) (comprehensive discussion of standards for deciding motion to withdraw the reference; cause established for permissive withdrawal where the matter is not core and creditor demands jury trial), *Carmel v. Galam (In re Larry's Apartment, L.L.C.)*, 210 B.R. 469 (D. Ariz. 1997) (withdrawal not warranted where no showing of right to jury trial), *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld L.L.P.*, 201 B.R. 635 (S.D.N.Y. 1996), *Zahn v. Yucaipa Capital Fund (In re Almac's Inc.)*, 202 B.R. 648 (D.R.I. 1996), *and Big Rivers Elec. Corp. v. Green River Coal Co.*, 182 B.R. 751 (W.D. Ky. 1995) (concerns of judicial economy warranted withdrawing the reference of an adversary proceeding against the debtor-coal company, regarding the validity of a coal supply contract, where the bankruptcy proceeding involved common issues of law and fact with another case pending in the district court).

20. Courts within the Sixth Circuit have recognized several factors relevant to permissive withdrawal, including: (1) whether the proceeding is core or non-core; (2) judicial economy and efficient use of judicial resources; (3) avoidance of forum shopping and confusion; (4) conservation of the resources of debtors and creditors; (5) expediting the bankruptcy process; (6) whether a jury trial is implicated; and (7) whether the bankruptcy court can enter a final judgment on the claims. *In re Marlynn Renee O'Neal,* 2008 WL 3932153 (Bankr.N.D.Ohio 2008). The Southern District of Ohio has specifically applied these considerations in determining whether cause exists for withdrawal. *In re Hughes–Bechtol,* 141 B.R. 946, 948–49 (Bankr.S.D.Ohio 1992).

21. The core/non-core distinction is particularly significant because a bankruptcy court's authority to enter a final judgment depends substantially upon the nature of the proceeding. *See, e.g.*, *In re Ronald Brown*, No. 2:14-cv-2014, 2015 WL 2238097, at *2 (Bankr.S.D. Ohio 2015).

22. Accordingly, the Court should consider the substance of the claims asserted in the Complaint, the identity and number of parties—including the non-debtor Defendants against whom independent claims are asserted—the relief sought, and the practical consequences of retaining the reference.

**III. MANDATORY WITHDRAWAL IS WARRANTED BECAUSE RESOLUTION OF PLAINTIFFS' CLAIMS REQUIRES SUBSTANTIAL AND MATERIAL CONSIDERATION OF NON-BANKRUPTCY FEDERAL LAW**

25. Plaintiffs recognize that mandatory withdrawal under § 157(d) is construed narrowly. Mandatory withdrawal does not arise merely because a proceeding happens to mention a federal statute. Rather, withdrawal is appropriate when resolution of the proceeding requires substantial and material consideration of federal law outside Title 11.

26. The Sixth Circuit has not adopted a rule requiring withdrawal whenever a federal statute is mentioned in a complaint. Consistent with the authorities applied within this Circuit, the relevant inquiry is whether the non-Title 11 federal law is necessary and substantial to resolution of the proceeding.

27. For example, courts have held that § 157(d) requires withdrawal where resolution of the proceeding cannot be accomplished without substantial and material consideration of federal statutes governing interstate commercial activity. *In re White Motor Corp.*, 42 B.R. 693, 703–05 (Bankr.N.D. Ohio 1984).

28. This case presents precisely the type of federal-law issues that warrant consideration by the district court. Plaintiffs' investments were made pursuant to the federal EB-5 immigrant investor program and were accompanied by representations concerning how Plaintiffs' capital would be deployed and how the Enterprise would be operated and maintained in compliance with applicable EB-5 requirements. *See* Complaint.

29. Resolution of Plaintiffs' claims therefore requires consideration of the federal statutory and regulatory framework governing the EB-5 investments, including the requirements of the EB-5 program and the representations made to Plaintiffs concerning compliance with that federal program. *Id*.

30. In addition, the Complaint alleges misconduct arising from investment transactions and representations concerning the purchase and deployment of investment interests. *Id*. To the extent the claims require interpretation or application of federal securities laws, those laws constitute federal laws regulating organizations or activities affecting interstate commerce within the meaning of § 157(d).

31. These federal law issues are neither collateral nor incidental. They arise directly from the nature of Plaintiffs' EB-5 investments, the representations made by Debtor and multiple non-debtor Defendants, the manner in which Plaintiffs' investments were allegedly deployed, and the alleged misconduct concerning the Enterprise.

32. Accordingly, if the Court determines that adjudication of Plaintiffs' claims requires substantial and material consideration of federal non-bankruptcy law, § 157(d) mandates **mandatory withdrawal** of the reference. At a minimum, alternatively, the presence of these substantial federal issues strongly supports permissive withdrawal under § 157(d).

## IV. PERMISSIVE WITHDRAWAL IS WARRANTED BECAUSE THE CLAIMS AGAINST THE NON-DEBTOR DEFENDANTS ARE NON-CORE AND CANNOT BE FINALLY ADJUDICATED BY THE BANKRUPTCY COURT WITHOUT CONSENT

35. Independent or alternative of mandatory withdrawal, ample cause exists for **permissive withdrawal**.

36. Plaintiffs' claims against the non-debtor Defendants are not created by the Bankruptcy Code. Indeed, non-debtor Defendants Nithin Johnson and Neethi Johnson have

expressly challenged the Bankruptcy Court's subject-matter jurisdiction over the claims asserted against them in their Motion to Dismiss. *See* Doc. 25.

37. Plaintiffs' claims arise instead from alleged fraud, misrepresentations, omissions, conversion, wrongful transfers, and other independent misconduct under Ohio law and, where applicable, federal law. *See* Complaint. These claims could plainly exist outside of bankruptcy.

38. The fact that one Defendant (i.e., Debtor John Johnson) subsequently filed bankruptcy does not transform independent state-law and federal-law claims against non-debtor Defendants into claims created by Title 11.

39. To the extent such claims are merely "related to" the bankruptcy case, § 157(c)(1) provides that the bankruptcy judge may hear the proceeding and submit proposed findings of fact and conclusions of law to the district court, absent consent. Thus, Section 157(c)(1) further demonstrates why withdrawal is appropriate here because the non-debtor Defendants have already challenged the Bankruptcy Court's jurisdiction. *See* Doc. 25 at 2.

40. Plaintiffs should not be required to litigate the same underlying factual dispute in two forums—one proceeding before the Bankruptcy Court concerning Debtor and another proceeding before the District Court concerning non-debtor Defendants—when all claims arise from the same transactions and alleged course of misconduct.

41. The Bankruptcy Court's inability to enter final judgment over the entire controversy without the necessary consent weighs heavily in favor of permissive withdrawal. The district court is the appropriate forum to adjudicate all claims, determine the rights and liabilities of all parties, and enter a single final judgment.

## V. WITHDRAWAL WILL PROMOTE JUDICIAL ECONOMY AND AVOID DUPLICATIVE AND INCONSISTENT LITIGATION

44. Judicial economy strongly favors withdrawal. Plaintiffs' claims arise from a common nucleus of operative facts. The same investment agreements, representations, financial records or lack thereof, corporate documents, communications, witnesses, transactions, and alleged wrongful misconduct will be relevant to claims against both Debtor and the non-debtor Defendants.

45. If the reference is not withdrawn, Plaintiffs may be forced to prosecute substantially identical factual issues in multiple separate court proceedings. Such bifurcation would create unnecessary duplication in discovery, motion practice, expert testimony, trial preparation, and potentially trial itself.

46. It would also create a substantial risk of inconsistent findings concerning the same transactions and/or conduct and prejudice against the bankruptcy estate. By contrast, withdrawal will permit a single district court to resolve the entire controversy in one proceeding.

47. The Southern District of Ohio has recognized that judicial economy, efficient use of judicial resources, avoidance of confusion, and conservation of the parties' resources are important considerations in determining whether cause exists for withdrawal. *See Elite Construction Design Management LLC, et al. v. Walter Everett Kerschner, Jr., et al.*, 2023 WL 12257816 (S.D. Ohio 2023); *see also In re Marlynn Renee O'Neal*, 2008 WL 3932153 (Bankr. N.D. Ohio 2008).

48. These considerations are particularly compelling here because the claims against Debtor and non-debtor Defendants are factually intertwined rather than independent or unrelated disputes. Withdrawal will therefore conserve judicial resources rather than waste them.

## VI. WITHDRAWAL WILL AVOID FORUM SHOPPING, CONFUSION, AND UNNECESSARY BIFURCATION

53. Plaintiffs do not seek withdrawal to obtain a more favorable forum or to circumvent the Bankruptcy Code. Plaintiffs seek a single forum capable of resolving all claims against all Defendants.

54. The present jurisdictional dispute was created, in substantial part, by the non-debtor defendants' own contention that the Bankruptcy Court lacks jurisdiction over the claims against them. *See* Doc. 25 at 2. Plaintiffs should not be placed in the untenable position of being required to litigate the same controversy in multiple courts because certain defendants dispute the Bankruptcy Court's jurisdiction.

55. Withdrawal would eliminate that confusion and provide one forum for resolution of the entire controversy. It would also eliminate the possibility that the Bankruptcy Court will adjudicate the claims against Debtor while another court simultaneously adjudicates substantially identical claims against the non-debtor Defendants.

56. Such bifurcation would be inefficient, costly, and contrary to the interests of judicial economy because it will avoid forum shopping and unnecessary bifurcation because the Complaint in this case is not limited to the allowance or disallowance of Plaintiffs' claims against the bankruptcy estate. *See* Complaint. Rather, Plaintiffs seek adjudication of independent causes of action against multiple Defendants arising from pre-petition conduct. *See* Complaint.

57. The relief sought by Plaintiffs includes liability determinations and damages against Defendants who are not debtors in the underlying bankruptcy case. *Id*. Even if the Bankruptcy Court conducts pretrial proceedings, the district court will be required to enter final judgment on matters that are non-core or otherwise subject to the district court's review.

58. Retaining the reference under these circumstances risks creating two levels of adjudication over the same factual disputes. Withdrawal at this early stage avoids that duplication

and places the entire matter before the district court that can enter a final judgment as to all parties and claims. Indeed, the coexistence of bankruptcy issues and substantial non-bankruptcy issues is precisely what makes the district court's consideration of withdrawal appropriate.

**VII. PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE BASED UPON A JURISDICTIONAL DISPUTE AND THE MOTION IS TIMELY**

59. Defendants Nithin Johnson and Neethi Johnson as well as Debtor have raised issues concerning the Bankruptcy Court's jurisdiction and the sufficiency of Plaintiffs' pleadings in their Motions to Dismiss. *See* Motions to Dismiss at Doc 25 and Doc 19, respectively.

60. Even assuming, solely for purposes of argument, that the Court determines that additional factual particularity is required under Federal Rules of Civil Procedure 8, 9(b), or 10, dismissal with prejudice would be inappropriate at this stage.

61. The Complaint alleges a detailed course of conduct involving substantial investments of millions of dollars, representations concerning the Enterprise and the EB-5 program, the management and disposition of the Enterprise's assets, and independent misconduct by multiple Defendants. *See* Complaint.

62. Any pleading deficiencies identified under Rules 8, 9(b), or 10 can be addressed through amendment. Federal Rule of Civil Procedure 15(a)(2), applicable through Federal Rule of Bankruptcy Procedure 7015, provides that leave to amend should be freely given when justice so requires. Following, or while, withdrawal of the reference is pending, Plaintiffs intend to seek leave to amend the Complaint as necessary to address any pleading-specificity concerns identified by the Court. Withdrawal therefore provides the most efficient procedural mechanism for resolving both the jurisdictional and pleading issues without prematurely terminating Plaintiffs' claims.

63. Plaintiffs bring this Motion promptly after the jurisdictional issues concerning the non-debtor Defendants were raised in Motion to Dismiss (Doc. 25), and while this adversary

proceeding remains at an early procedural stage. No pretrial proceedings have occurred, and the Court has not invested substantial resources in pretrial or case management. Withdrawal at this stage will therefore minimize, rather than increase, duplication and delay. Plaintiffs have not waived their right to seek withdrawal, and the Motion is timely under 28 U.S.C. § 157(d).

**VIII. CONCLUSION**

This adversary proceeding presents an unusual combination of circumstances that strongly favors withdrawal of the reference. Plaintiffs assert independent claims against Debtor and multiple non-debtor Defendants arising from the same underlying transactions and course of conduct. Some non-debtor Defendants have challenged the Bankruptcy Court's jurisdiction over the claims against them. The claims against those Defendants are, at minimum, non-core claims that cannot be finally adjudicated by the Bankruptcy Court absent consent.

Moreover, resolution of the adversary proceeding requires consideration of substantial federal law issues arising outside Title 11, including federal immigration law governing the EB-5 investor program and, to the extent applicable to the claims, federal securities law. Maintaining the reference would risk bifurcating one controversy into multiple proceedings, requiring duplicative discovery and motion practice and creating a substantial risk of inconsistent findings.

Mandatory or permissive withdrawal will instead promote judicial economy, conserve the resources of the parties and the judiciary, avoid confusion, and permit one district court to resolve all claims against all parties in a single proceeding. For these reasons, Plaintiffs respectfully request this Court GRANT Plaintiffs' Motion to Withdraw the Reference pursuant to 28 U.S.C. § 157(d); WITHDRAW the reference of the above-captioned adversary proceeding from the United States Bankruptcy Court to the United States District Court for the Southern District of Ohio;

DIRECT that the adversary proceeding proceed before this Court as an original civil action; and

GRANT such other relief as the Court deems just and proper.

Respectfully submitted,

BRENNAN, MANNA AND DIAMOND, LLC.

By: /s/ Duriya Dhinojwala
Duriya Dhinojwala (0074982)
Matthew R. Duncan (0076420)
75 E. Market Street, Akron, OH 44308
Phone: 330-253-5790; Fax: 330-374-6896
Email: dd@bmdllc.com
mrduncan@bmdllc.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of *Plaintiffs' Motion to Withdraw the Reference* was served on the date of filing electronically through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and on September 8, 2026 by regular U.S. Mail to all creditors listed in the creditors' matrix and on the following parties:

Hospital Innovations LLC
c/o Harold Ramsey, President
570 Barnett Place
Ridgewood, NJ 07450

Hospital Innovations LLC
c/o Statutory Agent, Neethi or John Johnson (as of 05/07/2025)
4319 Vaux Link
New Albany, Ohio 43054

East Ohio Hospital LLC
c/o Harold Ramsey, President
570 Barnett Place
Ridgewood, NJ 07450

East Ohio Hospital LLC
c/o statutory agent, Erik Schramm (as of 06/26/2025)
Hanlon Schramm LP
46457 National Road
Saint Clairsville, OH 43950

Access Martins Ferry LLC
c/o Harold Ramsey
570 Barnett Place
Ridgewood, NJ 07450

Access Martins Ferry LLC
c/o statutory agent, Erik Schramm (as of 07/02/2025)
Hanlon Schramm LP
46457 National Road
Saint Clairsville, OH 43950

Brent A. Stubbins
P.O. Box 488
Zanesville, OH 43702

Office of the U.S. Trustee
170 North High Street, Suite 200
Columbus, OH 43215

BRENNAN, MANNA AND DIAMOND, LLC.

By: ___/s/ Duriya Dhinojwala___________
Duriya Dhinojwala (0074982)
Matthew R. Duncan (0076420)
75 E. Market Street, Akron, OH 44308
Phone: 330-253-5790; Fax: 330-374-6896
Email: dd@bmdllc.com
mrduncan@bmdllc.com
*Attorneys for Plaintiffs*